ATTORNEY GENERAL, *ex rel.* ALLIS-CHALMERS CO., *v.* PUBLIC LIGHTING COMMISSION OF CITY OF DETROIT.

MUNICIPAL CORPORATIONS — CONTRACTS — COMPETITIVE BIDS — INJUNCTION.

Under the charter of a municipal corporation, all contracts for public improvements, if the expense should exceed $200, were required to be let to the lowest responsible bidder, with adequate security. The defendant advertised for bids, and three sealed proposals were received, one from two companies jointly. After the bids were opened, a committee was appointed to investigate the merits of the articles to be furnished and of the bidders. One of the joint bidders thereupon submitted a proposal to the committee which was later adopted by the defendant. *Held,* that defendant acted beyond the scope of its authority, in that the acceptance of the proposal was contrary to the express provision of the charter above outlined, and was not a competitive bid. A bill filed in the name of the attorney general, on the relation of one of the competing bidders, was a proper proceeding to determine the question, and the only one by which any action could be taken.

Appeal from Wayne; Brooke, J. Submitted November 10, 1908. (Docket No. 142.) Decided December 21, 1908.

Bill by John E. Bird, attorney general, on the relation of the Allis-Chalmers Company, against the public lighting commission of the city of Detroit to enjoin the performance of a contract. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Brennan, Donnelly & Van De Mark* (*John J. Speed*, of counsel), for complainant.

*Richard I. Lawson* (*P. J. M. Hally*, of counsel), for defendant.

McALVAY, J. Complainant appeals from a decree dismissing the bill filed by him, on the relation of the Allis-Chalmers Company, for the purpose of declaring the acceptance of the proposal of the Westinghouse Machine Company to furnish and install an electrical generating plant for defendant illegal and void, and for an injunction restraining defendant from entering into any contract pursuant thereto. Defendant advertised for sealed proposals "for the installation of an electrical generating plant, in accordance with specifications on file in the office of the commission." The advertisement and specifications were general. No particular style or make of machine was called for. It was required that proposals should state the amount of money allowed for old machinery displaced by the new plant. It is admitted that these proposals were solicited in the usual and ordinary way provided by the city charter. This provision is as follows:

"No contract for the purchase of any real estate, or for the construction of any public building, sewer, paving, graveling, planking, macadamizing, or for the construction of any public work whatever, or for any work to be done, or for purchasing or furnishing any materials, printing or supplies for said corporation, if the purchase of said real estate, or the expense of such construction, repairs, work, printing, materials or supplies shall exceed two hundred dollars, shall be let or entered into except to

and with the lowest responsible bidder, with adequate security." Detroit Charter (1904), chap. 11, § 9.

All of the facts in the case are stated in the bill of complaint and exhibits, the answer, and the proceedings of the commission. No dispute arises upon the facts, and the only question is whether the commission exceeded its authority in accepting the proposition of the Westinghouse Company as hereinafter detailed. .

The facts concerning the proposals solicited under the notice given appear to be that three sealed proposals were received—a joint proposition from the Westinghouse Electric Manufacturing Company and the Westinghouse Machine Company, one from the Western Electric Company, and one from the Allis-Chalmers Company. The record does not give the proposition of the Western Electric Company. The joint proposals of the Westinghouse Companies were as follows:

| | |
|---|---:|
| 1-2,000 K. W. 1,200 r. p. m. steam turbine unit with condenser and auxiliaries | $60,000 |
| If Lablanc condenser is installed in lieu of barometric condenser, price | 59,000 |
| 1-2,000 K. W. 1,800 r. p. m. steam turbine with auxiliaries and condenser | 54,000 |
| If Lablanc condenser is used the price will be | 53,000 |
| The offer for old materials, paragraph 8*b* and paragraph 24 of specifications | 1,000 |

The proposal by the Allis-Chalmers Company:

| | |
|---|---:|
| 1-2,000 K. W. steam turbine unit 1,800 r. p. m. with condenser and auxiliaries | 53,475 |
| For old materials referred to in paragraph 8*b* and paragraph 24 | 1,800 |

The Allis-Chalmers Company was the lowest bidder. These sealed proposals were submitted July 8, 1908, according to advertised notice. It is apparent from what appears from a transcript of the record of the proceedings of the commission that, after the sealed proposals were opened, a committee was appointed to investigate the merits of the machines and of the bidders; that later, and

155 MICH.—14.

on August 10th following, a proposition was submitted to the extension and supplies committee of the commission by the Westinghouse Machine Company, in which it offered to furnish a 2,000 K. W. turbo unit 1,200 r. p. m. machine and a barometric condenser for the sum of $53,000. The report of the committee and the action of the commission on the proposition of August 10th appears from the following minutes of the proceedings of the commission:

"A report was submitted by the extension and supplies committee on their investigation of the relative merits of the Westinghouse Machine Company's turbine and that of the Allis-Chalmers Company in which they recommended that the contract for the 2,000 K. W. turbine set be awarded to the Allis-Chalmers Company for the sum of $53,475.

"Commissioners Hetherington and Lynn opposed the awarding of the contract to the Allis-Chalmers Company on the ground that the Westinghouse Machine Company's turbine was the best machine.

"Commissioners Kales, Sheehy, the President and General Superintendent Mistersky, who visited the cities of Milwaukee, Wis., Chicago, Ill., Scranton, Pa., and Pittsburg, Pa., for the purpose of seeing the turbine of both companies in operation, particularly that of the Allis-Chalmers Company, as the commission have had a Westinghouse Machine Company's turbine in the plant for the past two years, stated that they had seen the Allis-Chalmers turbines in operation in each of the first three named cities, and from what they had seen and the information obtained the machines were giving good satisfaction, but they all agreed that everything being equal they would prefer the slow speed machine.

"A supplemental proposition, which was submitted to the extensions and supplies committee by the Westinghouse Machine Company on August 10th, was placed before the meeting, in which they offer to substitute a 1,200 r. p. m. machine and a barometric condenser at the price named for the 1,800 r. p. m. machine and the Lablanc condenser, which was $53,000.

"After some further discussion on the subject, Commissioner Hetherington moved, supported by Commissioner Lynn, that the Public Lighting Commission of the City of Detroit, Mich., enter into a contract with the Westing-

house Machine Company of Pittsburg, Pa., for a 2,000 K. W. turbo unit, 1,200 r. p. m. barometric condenser for $53,000, which motion was adopted on roll call as follows:

"Yeas: Commissioners Blain, Hetherington, Lynn and the President.

"Nays: Commissioners Kales and Sheehy."

The entire brief and argument of the defendant assumes that the proceedings of the commission were regular, and that the selection made was from the bids regularly before it in the exercise of a lawful discretion.

As we view the case, the question before us to determine is not whether the commission selected a low speed machine, or determined the lowest responsible bidder, nor whether it lawfully under certain circumstances may so select and determine, but whether the Westinghouse Machine Company's proposition to furnish and install a certain machine for $53,000 was ever regularly and lawfully before the commission, and whether its action in accepting such proposition was legal. The issue is not one between adverse litigants to determine their respective rights in a given controversy. The claim is that a body corporate has undertaken and is doing something it is not authorized to do under the law. The proceeding is the proper one to determine the question, and the only one by which any action could be taken. The public represented by the proper officer is the real complainant before the court. If the proposal accepted by the commission was ever properly before it, it must have been under the notice which invited competition, according to the provision of the charter we have quoted. It is not claimed that the proposal accepted was included in the sealed proposals submitted and opened, but that it was a supplemental proposition to a committee of the commission on August 10, 1908. If it could be conceded that this proposal was in fact a supplemental proposition modifying a bid submitted under the notice given, defendant's argument amounts to a contention that a bidder may, after the bids are all opened and have been under consideration,

reduce his bid, as in this case, to the amount of $7,000, and such proposition may be acted upon and accepted as within the requirements of law. We are furnished with no authorities sustaining such a proposition. We quote briefly from an authority which holds the contrary doctrine:

"It would entirely destroy all healthy competition and frustrate all the advantages derivable from receiving proposals upon public advertisement, if one of the competitors could be permitted, after the bids were opened, to alter his own bid to suit the case, so as to make it appear just below the others, and to have it presented as lower than it really was, even after alteration, for the purpose of getting the contract. * * * It would vitiate the whole system of competitive bidding, and lead to the grossest abuse, collusion, and overreaching of municipalities and others in like situation, if a favored competitor might, after all the bids were opened, all perhaps too high, and his the highest among them, secure the contract by altering his own bid to range just below the lowest of his rivals." *Dickinson* v. *City of Poughkeepsie*, 75 N. Y. 65.

The fact appears that the proposition accepted was the individual proposition of the Westinghouse Machine Company and the contract sought to be declared illegal is a contract to be made with this company. There was no individual proposal from this corporation submitted among the sealed proposals before the commission. The proposal submitted was by the Westinghouse companies jointly. The proposal accepted was for the first time submitted privately to a committee of the commission 30 days after the sealed proposals had been received and opened. The action of the commission in accepting the proposal of the Westinghouse Machine Company of August 10th was in effect a rejection of all proposals received under the advertised submission. The proposition accepted was never before the commission as provided by charter. The conclusion must follow that it was a private contract prohibited by the charter. Having arrived at this conclusion, it is unnecessary to discuss whether these

bids submitted under the notice were competitive bids, and other questions which are presented by the briefs and arguments of counsel. In view of the statement in the answer that defendant "disregarded all proposals made by the alleged competitors and selected the machinery that was best adapted to the wants and necessities of the public lighting commission," from which a fair inference may be drawn, and in fact has been drawn by counsel for complainant that the charter requiring advertisement for bids had no application to cases of machinery, materials, or property of which the seller has a monopoly, and which the authorities consider the best obtainable and in such cases purchases may be made at private sale.

In the case at bar the record does not show any monopoly and the authorities have by advertising for and receiving bids given their practical construction of the law. Speaking of similar statutory provisions, it has been well said :

"The object of all such provisions is to prevent favoritism, corruption, extravagance, and improvidence in the awarding of municipal contracts, and they should be so administered and construed as fairly and reasonably to accomplish such purpose." 20 Am. & Eng. Enc. Law (2d Ed.), p. 1165, and notes.

In construing the section of the charter under consideration, this court held in *Hobart* v. *City of Detroit,* 17 Mich. 246, that its requirements applied to a contract for the purchase of a patented article. This decision was approved in *Motz* v. *City of Detroit,* 18 Mich. 515. The same rule was applied under similar statutory provision to the board of public works of the city of Detroit. *Holmes* v. *Detroit Common Council,* 120 Mich. 226 (45 L. R. A. 121). For citation of authorities where the rule laid down by this court has been followed, see *Saunders* v. *Iowa City,* 134 Iowa, 132 (9 L. R. A. [N. S.] 397). This purchase was one clearly within the provision of the charter requiring notice and sealed proposals. A departure by the court from the rule laid down in our earlier de-

cisions would be unwise.  To hold the action of the commission in this case as lawful, even upon their own theory, would open the doors to all the undesirable results which the authorities hold the wise provisions of such legislation were intended to prevent.

The decree of the circuit court is reversed, and a decree will be entered declaring the action of the commission illegal and void, and a perpetual injunction will be granted as prayed.  No costs are allowed either party.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.