[Civ. No. 13565. First Dist., Div. One. Dec. 22, 1947.]

RAOUL H. CYR et al., Appellants, v. HERBERT K. WHITE et al., Respondents.

Edmund J. Holl and Allan H. Critcher for Appellants.

I. Karmel, City Attorney (Burlingame), Cosgriff, Carr, McClellan & Ingersoll and Luther M. Carr for Respondents.

BRAY, J.—The right of the trial court to sustain without leave to amend the demurrer to the complaint depends primarily upon the question whether, in a sixth class city, the council is legally required to award a contract for advertising legal notices to the lowest responsible bidder, or has discretion in the matter.

So far as material here, the allegations of the complaint are that Burlingame is a city of the sixth class; that plaintiffs are copartners, publishing, in the city of Burlingame, a weekly newspaper of general circulation, established as such by court decree, called "The Editor of Burlingame" (hereinafter for brevity called "The Editor"); that plaintiffs own personal property in Burlingame assessed for, and upon which they pay, taxes; that the only other newspaper of general circulation in Burlingame is the "Burlingame Advance and Burlingame Star" (hereinafter for brevity referred to as "The Star"); that pursuant to the Municipal Corporations Act, the city council invited bids for the publication of all the city's legal notices from December 1, 1946, to July 1, 1947; that in accordance with the advertisement, plaintiffs submitted a bid for publication in "The Editor" of all legal notices, for the price of 80 cents per square for the first publication and 40 cents per square for each subsequent publication; that the publisher of "The Star" submitted a bid of $1.00 per square for the first publication and 50 cents per square for each subsequent publication; that the unit price bid by the publishers of "The Star" is 25 per cent greater than that bid by plaintiffs; that on December 16, 1946, the city council awarded the contract for the publication of legal notices for the balance of the fiscal year to "The Star"; that such award was illegal and void, because, first, the contract was awarded for less than one year, and secondly, the contract was not awarded to the lowest bidder, but to the highest bidder. The complaint then alleges that certain advertisements were published by "The Star" for the city pursuant to the contract, and asks that the award and contract be declared null and void, and that the city be enjoined from paying the charges for the advertising done pursuant to the contract.

Defendants demurred generally to this complaint, and the court sustained the demurrer without leave to amend.

Plaintiffs contend that the demurrer should not have been considered, because of the claimed failure of defendants

to comply with rule XIX, subdivision 1, Rules of the Superior Court (213 Cal. LXXXVIII) which requires a memorandum of points and authorities to accompany the demurrer. The only attempted compliance with this rule was the mention at the bottom of the demurrer of section 430 of the Code of Civil Procedure (the section setting forth grounds of demurrer), and McQuillin on Municipal Corporations, without giving volume or page. However, this defect was cured by the fact that no objection was made in the lower court and that the court requested both parties to file briefs, which they did.

## Award to Highest Bidder

For the purposes of this appeal, the allegations of the complaint must be taken as true and we must assume that the council awarded the contract to the highest, and not the lowest, bidder.

█ The portion of the Municipal Corporations Act which governs the letting of contracts of this nature by a sixth class city is section 874 (Stats. 1883, p. 93, as amended; 2 Deering's Gen. Laws, 1944 ed., Act 5233, p. 1995). It provides: "Public Works: When to be done by contract: Letting of contracts: Performance by day labor: Emergencies: Contracts for publication of legal notices. In any project for the erection, improvement and repair of public buildings and works; in all work in or about streams, bays, or water fronts, or in or about embankments, or other works for protection against overflow; in all street or sewer work exclusive of maintenance or repair; and in the furnishing of any supplies or materials for any such project inclusive of projects for maintenance or repair of streets or sewers, when the total expenditures required for the same exceed the sum of one thousand dollars ($1,000), the same shall be done by contract and shall be let to the lowest responsible bidder, after notice, . . . ." It then goes on to provide as to the character and method of notice and other matters, including the right of the council by a four-fifths vote to perform the work by day labor or purchase materials in the open market without further observance of the preceding provisions of the section. There is then a provision concerning awarding contracts in the event of emergency without previous advertising. Then comes a new paragraph which reads: "Contracts for publication of legal notices. In the event that there is more than one newspaper of general circulation printed and published in such city the city council shall,

annually, prior to the beginning of each fiscal year, publish a notice inviting bids, and, contract for the publication of all legal notices required to be published in a newspaper of general circulation printed and published in said city. Said contract shall include the printing and publishing of all such legal notices during the ensuing fiscal year.'' If there is only one newspaper in the city then the council may contract with it without advertising for bids.

Plaintiffs contend that the requirement that the contract be let to the lowest bidder set forth in the public works portion of the section, controls the second paragraph relating to contracts for publication of legal notices.

There has been no interpretation of this latter portion of the section by the courts of this state. Plaintiffs cite a number of cases to the effect that the primary purpose of requiring competitive bidding on municipal contracts is to prevent fraud and collusion and for the protection of public funds. Among others, they cite *Attorney General* v. *Public Lighting Commission,* 155 Mich. 207 [118 N.W. 935]; *Miller* v. *Incorporated Town of Milford,* 224 Iowa 753 [276 N.W. 826, 114 A.L.R. 1423], and *Harris* v. *City of Philadelphia,* 299 Pa. 473 [149 A. 722]. They then go on to state that under the rule of construction of statutes *in pari materia (Estate of Jacobs,* 61 Cal.App.2d 152 [142 P.2d 454]), as both paragraphs deal with municipal contracts, the two paragraphs must be construed together. They point out that section 777 relating to cities of the fifth class is practically identical with section 874. As to fourth-class cities, there is no specific provision concerning contracts for the publication of legal notices, although section 628 provides generally that all contracts for work to be performed, or materials to be used, exceeding $500, shall be let to the lowest bidder. Section 536 relating to cities of the third class requires that bids for doing city printing and advertising shall be let to the *lowest* bidder. As to cities of the second class, there is no provision at all, while Act 5233, section 106, requires cities of the first class to let their printing and advertising to the ''lowest responsible bidder.''

An examination of section 874 shows that there is quite a difference between its two parts. The requirement that contracts be let to the lowest responsible bidder appears only in the first paragraph relating to public works, etc., and then only where the ''total expenditures required'' exceed $1,000.

While the object of statutes requiring municipal contracts to be awarded on the basis of competitive bidding is to prevent waste of the public money, corruption and favoritism (as established by the many cases cited by plaintiffs) there is a very sound ground for differentiating between contracts for public works and the publication of legal notices, which differentiation the Legislature apparently had in mind. Generally speaking, contracts for public works are to be completed in a similar manner by whichever contractor gets the job, but the question of the value of legal advertising involves the circulation of the particular newspaper, that is, the number of people who will see the notices. Public policy requires that there be no favoritism in the letting of municipal contracts, but, at the same time, it also requires that notices required by law to be published should reach as many persons as possible. In a given city, there may be two newspapers of general circulation, one a daily with a tremendous circulation, the other a weekly with a very small circulation. While the latter might be able to publish legal notices much cheaper than the former, it would be far more in the interests of the public that the city's legal notices be published in the paper of larger circulation. At least, in awarding a contract, the city council should be permitted to weigh that consideration against the matter of cost, and unless the council abuses its discretion, its determination should stand.

Plaintiffs argue that unless the contract is awarded to the lowest responsible bidder there is no object in calling for competitive bids, that it would be a waste of public funds to advertise for bids and then give the contract to the highest bidder. However, that does not necessarily follow. Advertising is necessary to give publicity to the fact that a contract is to be awarded, and hence the action of the council is kept open to public scrutiny. Secondly, the council cannot arbitrarily award the contract to the highest bidder. While, as here, the council has discretion to determine which is the better bid, having in mind both price and other matters affecting the value to the public, including the question of circulation, it is a wise discretion that must be used, and the courts can control any abuse of that discretion.

Even if, as claimed by plaintiffs, "the lowest responsible bidder" portion of section 874 applies to contracts for publication of legal notices, which it does not, the case of *West* v. *Oakland,* 30 Cal.App. 556 [159 P. 202], while not in-

volving section 874 or a municipal contract for advertising, is determinative of the questions here, as it disposes of arguments very similar to those made by plaintiffs in this case. There, the city advertised for bids for the installation of locking devices in its jail. The city charter definitely provided that the contract "shall be" let to the lowest responsible bidder. After extensive investigation the council rejected the bid of the West company, although it was the lowest, and accepted a higher bid, for the reason that the council felt that the West locking device did not measure up to the requirements of the plans. Just as plaintiffs did here, West, as a taxpayer, brought suit against the city to have the award of contract set aside on the sole ground that the charter required the city to give the contract to the lowest responsible bidder. The contention of West was practically the same as the contention of plaintiffs here. Quoting from page 560: "It is the contention of the appellant that . . . the term 'lowest responsible bidder' " as used in the charter "is to be held to mean only that the lowest responsible bidder shall be the lowest bidder who has not been delinquent or unfaithful in any former contract with the city; and that otherwise, in every case of contracts awarded by competitive bidding, the council must either award the contract to the lowest bidder or must reject all bids.

"We are of the opinion, however, that this is altogether too narrow and binding a construction to place upon these provisions of the Oakland city charter. There are many occasions in the experiences of municipal government when the quality of the thing to be supplied in the course of the public service depends upon conditions which differentiate bidders, and require the exercise of a sound discretion on the part of city officials in determining whether the wares or device which each individual bidder offers in the form of his own exclusive design are such as will meet the particular requirements of the intended work. In order to cover such cases it is quite usual in the provisions of city charters to find such terms as 'lowest and best bidder,' or as 'lowest responsible bidder,' and the like; and these phrases have been given by the courts a particular meaning, in which it must be presumed they are used by the framers of city charters in the absence of other limiting clauses. The term 'lowest responsible bidder' has been held to mean the lowest bidder whose offer best responds in quality, fitness, and capacity to the particular require-

ments of the proposed work; and that where by the use of these terms the council has been invested with discretionary power as to which is the lowest responsible bidder, having regard to the quality and adaptability of the material or article to the particular requirements of its use, such discretion will not be interfered with by the courts in the absence of direct averments and proof of fraud. (2 Dillon on Municipal Corporations, 5th ed., sec. 811, p. 1223, and cases cited.) And even when in statutes and charters the term 'lowest bidder' only is employed, the courts have held that in determining whether a bid is the lowest among several others, there may be cases where the quality and ability of the thing offered—in other words, its adaptability to the purpose for which it is required—may be considered.''

Plaintiffs contend that the lowest bidder must be assumed to be the lowest *responsible* bidder unless the council makes a finding to the contrary, and cites McQuillin on Municipal Corporations (no volume or page), *Seysler* v. *Mowery,* 29 Idaho 412 [160 P. 262]; *Times Publishing Co.* v. *City of Everett,* 9 Wash. 518 [37 P. 695, 43 Am.St.Rep. 865], and other cases from outside jurisdictions. That this is not the rule in California is decided by the West case, *supra,* where the court says (p. 562): ''It is also contended by appellant that it was the duty of the city council, upon determining that the M. G. West Company was not the lowest responsible bidder, to make a specific finding to that effect. Whatever the rule upon that subject may be in other jurisdictions, the question has been determined in this state adversely to the appellant's contention in the case of *Rice* v. *Board of Trustees,* 107 Cal. 398 [40 P. 551], wherein it was discussed and decided that it was not necessary for a municipal board in making a record of its action in the rejection of certain bids, to also make an entry of its reason for so doing, but that the real reason for its action might be shown upon the trial of the case involving the validity and integrity of the action of the board.''

In *Thoits* v. *Byxbee,* 34 Cal.App. 226 [167 P. 166], the court stated (p. 235): ''The finding of the council, in the absence of fraud and collusion (neither of which was alleged nor claimed in this proceeding) is conclusive. (*Butler* v. *Printing Commrs.,* 68 W.Va. 493, [38 L.R.A.N.S. 653, 70 S.E. 119]; 3 McQuillin on Municipal Corporations, sec. 1228.)''

In *Hodgeman* v. *City of San Diego,* 53 Cal.App.2d 610 [128 P.2d 412], in considering a municipal contract for water meters the court held that price alone did not determine who was the lowest responsible bidder and that the council had a discretion to determine, as well as the price, the type of meter which it deemed best adapted in physical appearance and mechanical operation, to the needs of the city. See, also, *San Buenaventura* v. *Ventura Co. Star,* 29 Cal.App.2d 41 [83 P.2d 975], where the court construes a provision of the city charter which provides that the contract for city advertising must ''be awarded to the responsible bidder submitting the lowest bid on the basis of the *bona fide* subscription list of paying subscribers of said publication within the city limits'' and held (p. 42): ''The clear purpose of the provision is to insure the widest circulation of the public notices at the lowest cost to the city.''

█ It is apparent, therefore, that the rule in this state is that it is not necessary for a city council awarding a bid to other than the lowest bidder to make a specific finding or record to the effect that the lowest bidder was not the lowest responsible bidder, and that to attack the award, the attacker must allege and prove fraud.

## Contract for Less Than Year

█ There is no merit to the contention that because the contract was let subsequent to the beginning of the fiscal year and for less than a year period, it is void. Section 874 provides that the council ''shall, annually, prior to the beginning of each fiscal year'' call for bids and that the contract let pursuant to the bids received ''shall include the printing and publishing of all such legal notices during the ensuing fiscal year.'' The fiscal year runs from July 1 to June 30. Here the call for bids was not published until November 1, 1946, nor the contract awarded until December 16. The contract merely covered advertising for the balance of the fiscal year. While it is true that the statute requires the council to invite bids and contract before the beginning of the fiscal year, and unless some good reason existed for the delay, the council probably would be derelict in its duty for failing so to do, there is nothing in the law that says the council cannot do belatedly what it should have done on time. Public policy would require that there be in existence a contract so that legal notices could be published as required by law, and the failure of the council (if there was any failure) to obtain such contract on time

would not deprive the council of the right to remedy the situation as soon as possible, whether the direction in the statute is mandatory or merely directory.

### Sustaining Demurrer Without Leave to Amend

█ The complaint failing to state a cause of action, the court correctly sustained the demurrer. Plaintiffs contend that they should have been given leave to amend. But how could they have amended without stating an entirely new cause of action? The complaint was brought on the sole theory that, as a matter of law, the council must award the contract to plaintiffs as the lowest bidder. On page 26 of appellant's opening brief there appears: "The complaint clearly alleges the illegality of the contract in that it was not let to the lowest responsible bidder. It is set forth that the plaintiffs were the lowest bidder, and, accordingly, they were *prima facie* entitled to receive the contract." Obviously, to amend, plaintiffs would have to charge fraud, a cause of action quite different from the theory on which they proceeded. Nowhere in the complaint or briefs is there the slightest intimation that there was any fraud committed by the council, or that the plaintiffs claim that there was. In view of these circumstances, it cannot be said that the court abused its discretion in denying leave to amend. In *Pagett* v. *Indemnity Insurance Co.*, 54 Cal.App.2d 646, 649 [129 P.2d 700], the court stated: "It is well settled that a new and different cause of action may not be set up in an amended complaint and that the trial court should grant a motion to strike an amended complaint which sets up an entirely new and different cause of action. [Citing cases.]" In *Routh* v. *Quinn*, 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215], the plaintiff complained that the court abused its discretion in refusing to permit him to amend his complaint. In holding that there was no abuse of discretion the court said (p. 493): "From plaintiff's complaint the basis of plaintiff's action is clear, that is, negligence in the calculation of the amount of the tax claimed against the property involved. Inasmuch as we have determined that no cause of action exists for such alleged negligence, there are no circumstances under which an amendment would serve any useful purpose." ". . . the allowance or refusal of amendments is a matter so largely within the sound discretion of the trial court that its exercise will not be disturbed in the absence of a showing of gross abuse." (*Fetterley* v. *Gibson*, 210 Cal.

282, 283 [291 P. 411].) So here, as we have determined that no cause of action exists for failing to award the contract to plaintiffs as the lowest bidder, the court did not abuse its discretion in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.