[Civ. No. 21727.   First Dist., Div. One.   Sept. 3, 1964.]

DIABLO BEACON PRINTING & PUBLISHING COM-
PANY, INC., et al., Plaintiffs and Appellants, v. CITY
OF CONCORD et al., Defendants and Respondents.

Marcus, Lohstroh & Bresnahan and Terrance M. Bresnahan for Plaintiffs and Appellants.

Thomas F. McBride, City Attorney, and Samuel Conti, Deputy City Attorney, for Defendants and Respondents.

BRAY, P. J.—Plaintiffs appeal from judgment entered on order sustaining demurrer without leave to amend.[1]

### QUESTION PRESENTED

Does the complaint, which alleges that defendant city council unlawfully accepted a higher bid for the publication of legal notices in a newspaper where the successful bidder did not state the paper's circulation within the city, as called for in the notice to bidders, state a cause of action?

### RECORD

Plaintiff Diablo Beacon Printing & Publishing Company, Inc., a California corporation and taxpayer in the City of Concord, sued the City of Concord, and certain officials thereof, on behalf of itself and all other taxpayers of the city. The complaint alleges in pertinent part that defendant city caused to be published a legal notice inviting bids for the publication of all legal notices within the city for the fiscal year 1963-1964. The notice stated, "Bidders must specify . . . present circulation within the City." Thereafter sealed bids were submitted by the two newspapers of general circulation published in Concord, the "Concord Transcript," also known as the "Transcript," and the "Diablo Beacon." At a regular meeting of the city council held on June 24, 1963, the bids were opened. Diablo Beacon's bid was $.68 per square for the first insertion, and $.40 per square for each subsequent insertion. The Concord Transcript's bid was $.76 per square for the first insertion and $.45 per square for each subsequent insertion. The Transcript advised the city that it had a circulation of 9,554 subscribers without specifying the number of subscribers within Concord. The city accepted the higher bid of the Transcript and awarded it the contract for pub-

---

[1]The order also denied plaintiffs' application for preliminary injunction. No appeal has been taken from such order.

lishing legal notices. The complaint further states that the act of the council in accepting the Transcript's bid was illegal in that the Transcript in its bid did not specify the circulation that it had within the City of Concord, thereby failing to meet the requirement of the notice calling for bids; that any expenditure of municipal funds for payment of legal notices pursuant to the contract would be illegal. Plaintiffs then asked that a preliminary injunction issue restraining the officials from acting under the contract; that the contract be declared null and void and that the officials be permanently restrained from acting under it. Defendants' demurrer to the complaint was sustained without leave to amend and plaintiffs' request for a preliminary injunction was denied. Judgment was then entered on the order sustaining the demurrer.

### No Cause of Action

Section 37907 of the Government Code, provides: "Annually before the beginning of the fiscal year, in cities where there is more than one newspaper of general circulation printed and published, the legislative body shall publish a notice inviting bids and contract for the publication of legal notices required to be published in such a newspaper. The contract shall include the printing and publishing of all such legal notices during the fiscal year . . ." The only claim of illegality of the contract or abuse of discretion by the council in awarding it is that the Trancript's bid failed to state the number of its subscribers within the city.[2] Plaintiffs contend that this information was required as a condition in the call for bids and hence the bid was defective. As to this contention we adopt the following statement made by the trial judge, Honorable Martin E. Rothenberg, in the order sustaining the demurrer: "Plaintiffs also contend that the contract between the City and the Transcript is invalid for failure of the bid to set forth the circulation within the City. It is argued that the bid does not meet the requirements of the Notice of Bid and is therefore invalid. The analogy is made to public works contracts in which bids vary from the terms and conditions of bid notices. A distinction must be noted between the present case and those in which the bid varies from the prescribed terms and conditions. ▉ In the

---

[2]It is interesting to note the statement of the trial court in its order sustaining demurrer that the Diablo Beacon, the only other newspaper submitting a bid, did not give its circulation within the city.

case at hand, the information concerning circulation within the City could only be required for informational purposes; that is, to give the Council information on one of the bases upon which an award could be made. Circulation is not a term or provision of the award or contract. Thus, the bid is not fatally defective or at variance with the Notice of Bid.''

As we said in *Cyr* v. *White* (1947) 83 Cal.App.2d 22, 27 [187 P.2d 834]: ''Public policy requires that there be no favoritism in the letting of municipal contracts, but, at the same time, it also requires that notices required by law to be published should reach as many persons as possible. In a given city, there may be two newspapers of general circulation, one a daily with a tremendous circulation, the other a weekly with a very small circulation. While the latter might be able to publish legal notices much cheaper than the former, it would be far more in the interests of the public that the city's legal notices be published in the paper of larger circulation. At least, in awarding a contract, the city council should be permitted to weigh that consideration against the matter of cost, and unless the council abuses its discretion, its determination should stand. . . .

''. . . While, as here, the council has discretion to determine which is the better bid, having in mind both price and other matters affecting the value to the public, including the question of circulation, it is a wise discretion that must be used, and the courts can control any abuse of that discretion.'' (See also *Devine* v. *Freedom Newspapers, Inc.* (1952) 112 Cal.App.2d 664 [247 P.2d 65].)

■ There is a presumption of regularity of the actions of the council. (See Code Civ. Proc., § 1963, subd. 15.) Thus to state a cause of action plaintiffs would have to allege facts showing an abuse of discretion by the city council. Plaintiffs did not even attempt to do so other than to claim that the abuse consisted in not declaring the bid and contract void solely because of the omission from the bid of the newspaper's city circulation figure.

■ ''In determining whether to accept a bid for a public contract, public officers as a rule perform not merely ministerial functions, but duties of a judicial or discretionary nature, and the courts, in the absence of fraud or an abuse of discretion, will not ordinarily interfere, so long as the officers comply with the controlling constitutional or legislative provisions.'' (27 A.L.R.2d, p. 920.)

Plaintiffs contend that the court. should have allowed them to amend the complaint. They do not state in what manner they would amend. They do not state that they know of any facts upon which a claim of abuse of discretion by the council can be based. Therefore, it cannot be said that the court abused its discretion in denying leave to amend. (See *Cyr, supra,* at p. 31.) The trial court in its order pointed out that the mere difference in the amounts of the two bids and the omission of a statement concerning the city circulation could not constitute an abuse of discretion for it stated: "Both newspapers are published in the City of Concord. The TRANSCRIPT lists its net paid circulation at 9,554 copies, and the BEACON lists its circulation as 2,110. The Council could easily have determined the TRANSCRIPT had a greater circulation within the City of Concord. . . .

"There is a presumption of regularity of the actions of the City Council and we may assume that the Council determined which of the two newspapers had the greatest circulation within the City. It is not necessary for the Council to make any entry in its records of the reason for not making the award to the lowest bidder, *Cyr* v. *White, supra.*

"The *Cyr* case also holds that in order to attack the award, the attacker must allege and prove fraud, or, in the alternative, a sufficient pleading of abuse of discretion. Since such a pleading would set up an entirely new and different cause of action, it is proper to sustain a demurrer without leave to amend."

The cases cited by plaintiffs are not in point. *Neal Publishing Co.* v. *Rolph* (1915) 169 Cal. 190 [146 P. 659], dealt with a contract for furnishing supplies which the mayor refused to sign after the board of supervisors had awarded the contract to the plaintiff as the successful bidder. The mayor contended that the preferred contract did not comply with a certain provision of the city's charter and with a certain resolution of the board. The court held, in effect, that neither the charter provision nor the resolution applied. There is language in the case to the effect that the board of supervisors could not impose additional conditions to those imposed by the charter. In our case plaintiffs contend that by accepting "the Concord Transcript's bid based on *general circulation,* the City imposed an additional condition, thereby invalidating the contract." As we have hereinbefore stated the request in the call for bids was for information and the supplying

of that information was not a condition to the awarding of the contract.

*City of San Buenaventura* v. *Ventura County Star, Inc.* (1938) 29 Cal.App.2d 41 [83 P.2d 975], is not applicable. There, the sole question presented was " 'whether that portion of the charter of the City of San Buenaventura (Stats. 1933, p. 2880) which provides that the contract for city advertising must "be awarded to the responsible bidder submitting the lowest bid on the basis of the *bona fide* subscription list of paying subscribers . . ." means that the bidder submitting the lowest bid must be determined solely by the ratio which the amount of the bid bears to the number of paying subscribers of the newspaper within the city limits.' " The court held, "The ratio of the bid to the *bona fide* subscribers is the method which the charter framers deemed most expedient to accomplish" the purpose of insuring "the widest circulation of the public notices at the lowest cost to the city." (Pp. 42-43.) It is not contended that there is any provision similar to this in the law governing the City of Concord or in any resolution of the city council. It may reasonably be assumed that the council in weighing the relative merits of the two bids considered the circulation within the city of the respective newspapers, a matter easily ascertainable. In any event, the omission in the bid of a statement of the city circulation of the bidders was an omission which the council in its discretion could waive. Particularly is this so, as neither bidder placed this information in its respective bid.

The trial court was correct in sustaining the demurrer without leave to amend and in denying the application for a preliminary injunction.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.