[Civ. No. 732.   Fifth Dist.   Oct. 2, 1967.]

GEORGE R. CARPENSON et al., Plaintiffs and Appellants, v. MARTIN A. NAJARIAN et al., Defendants and Respondents.

858

Perry, Price & Carter and J. C. Price for Plaintiffs and Appellants.

Max M. Hayden, Landels, Ripley, Gregory & Diamond, Dubsick, Helon, Manfredo & Forbes, Earl M. Ripley, Marvin E. Helon, Wallace G. Quinlisk, Leo S. Kollingian and Staniford, Harris & Loomis for Defendants and Respondents.

GARGANO, J.—This appeal concerns the priority of trust deeds pertaining to the same parcel of real property. The facts are somewhat involved, but are essentially as follows: In September 1958, appellants George R. Carpenson and Emma L. Carpenson sold a parcel of vacant land, hereinafter referred to as the Marlo Motel property, to Karl Reichert and others; as part of the purchase price the Carpensons took a promissory note in the amount of $60,000 secured by a deed of trust. This trust deed, hereafter referred to as the Reichert Trust Deed, provided for automatic subordination to future construction loans as follows: "During the existence of this deed of trust, Trustor or his successors in interest may at any time construct a motel with *usual appurtenances* on said property and borrow money on the security of said property from a bank, insurance company or savings and loan association in connection with such construction. The lien of the deed of trust securing such loan shall, upon recordation thereof, auto-

matically be and become prior and superior to the lien of this deed of trust if said loan (and the note evidencing the same) (a) is in an amount not exceeding $150,000.00, (b) bears interest at a rate of not to exceed 8% per annum, and (c) the principal and interest of which are payable upon the maturity of said note which shall not be more than 15 years from the date thereof.''

In 1959 Leo P. Michaelides, Faye Michaelides, Martin A. Najarian, Susan Najarian, Mourad Najarian and Irene Najarian, hereafter referred to as the Michaelides-Najarian group, purchased the Marlo Motel property subject to the Reichert Trust Deed. In May of the same year the Michaelides-Najarian group borrowed $110,000 from respondent Sequoia Savings and Loan Association, hereafter referred to as respondent Sequoia, in order to build a motel on the vacant land. The loan was evidenced by a promissory note bearing interest at the rate of 6.6 percent per annum, and was secured by a trust deed against the Marlo Motel property, hereafter referred to as the Sequoia Trust Deed.

Leo P. Michaelides, Faye Michaelides and Martin Najarian, hereafter referred to as respondents Michaelides-Najarian, used the proceeds of the $110,000 loan to construct a motel on the Marlo Motel property. However, they soon discovered that an additional $15,000 was needed to meet construction costs to complete the motel. Thus, the Michaelides-Najarian group secured a second loan in this amount from respondent Sequoia. This loan was also evidenced by a promissory note and was made by respondent Sequoia after appellants had signed a separate subordination agreement which specifically subordinated the Reichert Trust Deed thereto. The subordination agreement was dated November 23, 1959, and was recorded on the following day.

In January of 1960 appellants gave the Reichert Trust Deed and a promissory note to Martin A. Najarian and Leo P. Michaelides in exchange for several subdivision lots. In May 1960, by mutual agreement, appellants reconveyed the subdivision lots to Martin A. Najarian and Leo P. Michaelides; in return Najarian and Michaelides reassigned the Reichert Trust Deed to appellants and cancelled appellants' promissory note. This transaction was handled in escrow. In the escrow instructions the Reichert Trust Deed was referred to as a ''Second Trust Deed of record in favor of George R. Carpenson being assigned.''

In January 1964 respondents Michaelides-Najarian bor-

rowed an additional $31,634.90 from respondent Sequoia. This loan, which was used to pay expenses incidental to the construction of the Marlo Motel, was secured by the Sequoia Trust Deed, a chattel mortgage on certain furnishings and fixtures of the Marlo Motel, and by two investment certificates, each in the amount of $7,000. As additional consideration for the loan respondents Michaelides-Najarian agreed in writing to increase the interest rate on the $110,000 and the $15,000 loans from 6.6 percent to 7 percent, effective January 15, 1964, and to increase the combined monthly payments on these loans to $1,340 per month. The interest on the loans was paid until February 28, 1964, but thereafter no further payments on principal or interest were made. At the time the total unpaid principal on the three loans made by respondent Sequoia was $147,724.98.

On January 3, 1964, after the Michaelides-Najarian group had defaulted on the promissory note secured by the Reichert Trust Deed, appellants caused the trustee to sell the Marlo Motel property at public auction pursuant to the power of sale contained in this trust deed. The trustee sold the property to appellants who took possession of the motel and all the personal property located within the motel. Appellants then filed an action for declaratory relief seeking to establish priority of the Reichert Trust Deed over the liens created by the loans which respondent Sequoia made to the Michaelides-Najarian group. Respondent Sequoia cross-complained for a judicial foreclosure of the Sequoia Trust Deed and the chattel mortgage. Respondents Michaelides-Najarian, by cross-complaint, charged appellants with conversion of the personal property and also sought damages against respondent Sequoia.

The court tried the issues raised by appellants' complaint and respondent Sequoia's cross-complaint sitting without a jury. The court severed respondent Michaelides-Najarian's cross-complaint for conversion and ordered the parties to try it later before a jury. At the conclusion of the court trial the court rendered judgment as follows: (1) The Sequoia Trust Deed was prior to the Reichert Trust Deed to the extent that it secured the $110,000 and the $15,000 loans, but not to the extent that it secured the $31,634.90 loan; (2) respondent Sequoia was entitled to foreclose its trust deed and obtain a deficiency judgment against respondents Michaelides-Najarian for any deficiency after applying the proceeds of sale toward the payment of the balance due on the $110,000 and $15,000

loans; (3) respondent Sequoia was entitled to foreclose its chattel mortgage and its other securities and to obtain a deficiency judgment against respondents Michaelides-Najarian after applying the proceeds of sale to the unpaid balance of the $31,634.90 note. Appellants Carpenson have appealed from this judgment.

The Carpensons present three main contentions for reversal: The trial court made certain errors prior to the trial; the evidence does not support the judgment; during the trial the court committed errors in law which caused a miscarriage of justice.

## I—ERRORS PRIOR TO TRIAL

■ (1) Appellants assert the court abused its discretion when it appointed a receiver for the Marlo Motel property because respondent Sequoia, who requested the receiver, offered no evidence to indicate that the property might be lost or materially injured, or that its value would be insufficient to discharge the mortgage debt. Appellants cite Code of Civil Procedure section 564 which provides in part: "In superior courts a receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases: . . .

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt; . . ." .

The court's order appointing a receiver was an appealable order (Code Civ. Proc., § 963, subd. 2). It was entered March 26, 1965, and became final at the expiration of 60 days after notice of the order was mailed, or if no notice was mailed, it became final at the expiration of 180 days after entry of the order (rule 2, Cal. Rules of Court). Significantly, appellants did not specifically appeal from this order. To the contrary, appellants' notice of appeal is from the judgment after trial; the notice was filed March 8, 1965, almost one year after the court appointed the receiver. Thus, we are without jurisdiction to consider the issue in this appeal (*Taliaferro* v. *Davis,* 217 Cal.App.2d 215 [31 Cal.Rptr. 693]).

. Moreover, the record indicates that the court appointed the receiver to take charge of the Marlo Motel property while the case remained undecided and that the receivership was "pen-

dente lite" (*Greenwich Sav. Bank* v. *Samotas*, 17 N.Y.S.2d 772.) It is the rule that a receivership "pendente lite" terminates with the rendition of the judgment and therefore any question as to the propriety of the appointment after rendition of the judgment is moot and will not be reviewed (*Mayo* v. *Mayo*, 8 Cal.2d 9 [63 P.2d 822]).

▮ (2) Appellants allege next that the court committed prejudicial error when it denied them a separate trial on the action for declaratory relief. The record indicates that on December 1, 1964, after issue was joined on appellants' first amended complaint and on the cross-complaints, the court granted appellants' motion to separately try their declaratory relief action. The court, however, reserved the right to further consider the question of separate trials at the pretrial hearing. At the conclusion of the pretrial hearing the pretrial judge vacated the previous order for separate trials and ordered that all of the issues raised by the pleadings be heard in one trial. Appellants then moved the court to set aside their previous waiver of a jury and to order a jury trial. Accordingly, the court severed the conversion action and ordered a jury trial for it, but the court denied appellants' request for a jury trial on the remaining issues raised by appellants' declaratory relief action and respondent Sequoia's cross-complaint for foreclosure of its trust deed.

Appellant's arguments in support of the assertion that the court should have ordered a separate trial on the declaratory relief action are so devoid of merit that they are hardly worth mentioning. It was evident from the pleadings that a judgment on the issues raised by the declaratory relief action would, by necessity, also resolve the issues raised by respondent Sequoia's cross-complaint. Thus, it suffices to point out that Code of Civil Procedure section 1048 provides: "An action may be severed and actions may be consolidated, in the discretion of the court, whenever it can be done without prejudice to a substantial right."

And as stated in *Realty, etc. Mortg. Co.* v. *Superior Court*, 165 Cal. 543, 547 [132 P. 1048], and reiterated in *Jud Whithead Heater Co.* v. *Obler*, 111 Cal.App.2d 861, 867 [245 P.2d 608]: ". . . the exercise of such discretion will not be reviewed except in a case of palpable abuse."

▮ (3) Appellants admit that they initially waived a jury trial; appellants apparently had not made a timely request for a jury. They nevertheless contend that the court erred when it denied their request to set aside their waiver

and refused to grant them a jury trial on the issues raised by their complaint and by respondent Sequoia's cross-complaint.

We conclude that appellants' contention is without merit. The determination as to whether a litigant will be relieved from a waiver of a jury rests within the sound discretion of the trial judge (Code Civ. Proc., § 631). Clearly, the court did not abuse its discretion in the instant case. To the contrary, when the court ordered a separate trial on respondent Michaelides-Najarian's cross-complaint, it also ordered a jury trial on the issues raised therein. Thus, the court granted appellants a jury trial on the only legal issues raised by the pleadings (the conversion action) notwithstanding their previous waiver. In other words, appellants' first amended complaint sought only equitable relief. It sought a determination of the rights and priorities of the parties under certain trust deeds and subordination agreements; it did not seek damages or recovery of property. Respondent Sequoia's cross-complaint also sought only equitable relief, a judicial foreclosure of a trust deed. Thus, all of the issues tried by the court sitting without a jury were equitable issues and the appellants were not entitled to a jury trial on these issues. It is settled that the California Constitution only guarantees the right to trial before a jury as it existed at common law in 1850 and that this means "legal" as distinguished from equitable actions (Cal. Const., art. I, § 7; *People* v. *One 1941 Chevrolet,* 37 Cal.2d 283 [231 P.2d 832]).[1]

## II—THE EVIDENCE

■ (1) According to the undisputed evidence, when respondent Sequoia first prepared the $110,000 promissory note which the Michaelides-Najarian group signed, it provided for monthly installment payments of $960. These installment payments would not have discharged the note within 15 years. Thereafter, respondent Sequoia forwarded the Sequoia Trust Deed to the Title Insurance and Trust Company for the procurement of title insurance; respondent Sequoia retained the promissory note. Later, respondent Sequoia struck the word "sixty" from the note and inserted the word "seventy-five" in its place which increased the monthly installments to $975 per month. Respondent Sequoia made this change in order to

---

[1]An exception is made as to declaratory actions which although equitable in nature are *sui generis* and may raise legal issues. Thus, as to these actions, if the pleadings reveal two separate issues, one equitable and the other legal, the litigant is entitled to have the legal issue tried by a jury (*Veale* v. *Piercy,* 206 Cal.App.2d 557 [24 Cal.Rptr. 91]).

discharge the note within 15 years. The Michaelides-Najarian group approved the change by initialing the margin of the note.

Appellants do not challenge the authenticity of the Sequoia Trust Deed nor do they deny the validity of the subordination clause contained in the Reichert Trust Deed. They simply contend that the Sequoia Trust Deed did not acquire priority over the Reichert Trust Deed because the monthly installment payments of $960, originally contained in the $110,000 promissory note, would not have discharged the note within 15 years as required by the subordination clause. Moreover, appellants admit that installment payments of $975 per month would have discharged the note within 15 years. They assert that the installment payments were increased after the loan transaction was consummated and after the note became operative.

We conclude that there was substantial evidence to support the court's decision that the note was changed before the loan transaction was fully consummated and before the Sequoia Trust Deed was recorded. Thus, we also conclude that there was substantial evidence to support the court's judgment that the lien created by the $110,000 note was prior to the Reichert Trust Deed. Mrs. Louise Rogers, a title officer of the Title Insurance and Trust Company, testified that she discussed the subordination clause in the Reichert Trust Deed with Gladys Riser, respondent Sequoia's secretary, on May 25, 1959. Specifically, she stated that she inquired whether the $110,000 note would be discharged within the 15-year limitation, that Mrs. Riser called her back by telephone later during the same day and informed her that the note had been changed to so provide,[2] and that she (Mrs. Rogers) caused the trust deed to be recorded on the following day, May 26, 1959. Mrs. Gladys Riser testified that she made the corrections in the note after talking to Mrs. Rogers on May 26, 1959. She stated that the makers of the note had been called in and that they had

---

[2]Appellants object to the conversation between Louise Rogers and Gladys Riser on the ground of hearsay. Clearly, that portion of the conversation in which Mrs. Rogers was advised that the note had been changed was hearsay and inadmissible over objection. However, the court indicated that the conversation was admitted only to show that it had taken place and not for the truth of the facts asserted. Thus, we shall assume that it was so treated by the court and no prejudice occurred. Moreover, this conversation, when viewed in light of Mrs. Rogers' testimony and portions of her deposition which were read into the record by appellants (*infra*), it is obvious that no prejudice could possibly have occurred.

initialed the change on the same day. She added that she called Mrs. Riser shortly thereafter and informed her that the change had been made.[3] Leon Thomas, the vice president-controller of respondent Sequoia testified that the $110,000 loan was not entered on respondent Sequoia's books and the loan funds were not made available to the Michaelides-Najarian group until May 27, 1959, after the trust deed had been recorded.

▪ (2) Appellants' second contention is that the court erred when it decided that the $15,000 note had priority over the Reichert Trust Deed. They argue that the monthly installment payments contained therein did not discharge the note

---

[3]Appellants also objected to this conversation on the ground of hearsay. However, once again it is clear that appellants were not prejudiced by the hearsay statements which were admitted into evidence. The court limited the admissibility of the hearsay portion of the conversation to the fact that it had occurred. Moreover, earlier during the trial appellants had introduced a portion of Mrs. Riser's deposition into evidence, and had read the following questions and answers into the record:

(Mr. Price) ''Q. Then the note that you typed up was in the amount of $110,000?
A. That's correct.
Q. And you recall that you had any contact with anyone at Title Insurance and Trust Company's office pertaining to this loan?
A. Before the loan was typed or after?
Q. Well, either right now.
A. I recall that the loan was typed up and there was some question regarding payment because of the second. And Mrs. Rogers called my attention to it and the note was corrected at that time.''

(Mr. Price) ''Q. At the time you talked to Mrs. Rogers, was that on the telephone?
A. Yes, it was.
Q. Do you recall whether she called you or you called her?
A. She called me.
Q. And do you remember the conversation you had with her at that time?
A. I don't remember the exact words. I remember the essence of the conversation was that the payment stipulated in the note did not conform with what the subordination of the second stipulated and therefore she indicated it would have to be raised.
Q. And what did you do then in response to this conversation with Mrs. Rogers?
A. She gave me a figure that had, I don't know, some odd cents on the end. I told her that I would check it out and correct it. I checked it out with Mr. Sullivan and he told me the note should be corrected to the nine seven five, and I corrected it, and the gentlemen were called in to initial it.''

(Mr. Price) ''Q. You merely struck it out and then called them to come in and initial it, is that correct?
A. I corrected it and they initialed it.
Q. When did they initial this change on the face of the note?
A. It was either the same day that Louise called me or—it was the same day Louise called me.
Q. The same day Mrs. Rogers called you?
A. That's correct.''

within the 15-year period required by the subordination clause contained in the Reichert Trust Deed. They also argue that a new trust deed was not executed or recorded and that this omission, in and of itself, prevented the $15,000 note from attaining priority.

In answer, respondents admit that the monthly installment payments contained in the $15,000 note would not have discharged the note within 15 years. They contend, however, that the restriction contained in the Reichert Trust Deed has no application because appellants signed a separate and independent subordination agreement which placed no such restrictions on the $15,000 note. This new subordination agreement provides: "WHEREAS, said Martin A. Najarian and Susan M. Najarian, husband and wife, Leo P. Michaelides and Faye Michaelides, husband and wife, and Mourad Najarian and Irene A. Najarian, husband and wife, executed a promissory note in the pincipal sum of $15,000.00 dated November 18, 1959 and a notice of additional loan . . . in said amount under the deed of trust first above set forth, and

Now THEREFORE, in consideration of the Sequoia Savings and Loan Association granting said additional loan to said Martin A. Najarian and Susan M. Najarian, Mourad Najarian and Irene A. Najarian, and Leo P. Michaelides and Faye Michaelides, said George R. Carpenson and Emma L. Carpenson beneficiaries under the deed of trust recorded in Book 4108 page 443 of Official Records, Document No. 55629, Fresno County Records, as above set forth, hereby agree to and do hereby subordinate the lien of said deed of trust last above described to the additional loan granted by Sequoia Savings and Loan Association as evidenced by the promissory note and notice of additional loan hereinabove set forth. Further, upon completion of the building on said land, a new deed of trust may be placed upon said land from any recognized lending institution, bank, insurance company, savings and loan organizations, securing a loan to be evidenced by a promissory note or notes, not exceeding in the aggregate the principal sum of One hundred fifty thousand ($150,000.00) dollars bearing interest not more than 8% (eight per cent) per annum and payable within fifteen (15) years commencing on December 31, 1959, and payable at such times and upon such terms as are required by the lender thereof, which deed of trust, when duly recorded and when the deed of trust contemplated above has been reconveyed, shall constitute a lien and charge on said

land prior and superior to the lien and charge of this deed of trust.''

We agree with respondents' contention that this subordination agreement was a separate and independent transaction and was not conditioned upon any restriction contained in the Reichert Trust Deed. It precisely identified the note to which the Reichert Trust Deed was subordinated and recited that this note was already in existence. It is inconsistent for appellants to contend that the very note which they identified in their agreement did not gain priority simply because it did not pay off within the period prescribed by a general restriction contained in the Reichert Trust Deed to which no reference of any kind was made in the agreement. It is a fundamental rule of statutory construction that a specific provision of a statute controls a general provision (*Hartford Acc. etc. Co.* v. *City of Tulare,* 30 Cal.2d 832 [186 P.2d 121]; *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]). We believe that the same rule should apply to contractual provisions dealing with the same subject matter where the interest of justice would be served thereby.

Moreover, even if it is assumed arguendo that the $15,000 loan was subject to the 15-year limitation prescribed by the Reichert Trust Deed, there is substantial evidence to support the court's conclusion that appellants ratified the transaction. Appellants reacquired the Reichert Trust Deed from Martin A. Najarian several months after the $15,000 loan was made. The reassignment of the Reichert Trust Deed was handled in escrow and was referred to therein as ''a second trust deed of record in favor of George R. Carpenson being assigned.'' Thus, there was reasonable basis for the court to conclude that when appellants reacquired the trust deed they were fully apprised of the terms of the two notes secured by the Sequoia Trust Deed and expressly took the Reichert Trust Deed subject to the liens created by these notes and thereby ratified the terms thereof.

In any event, we conclude that there was substantial evidence to support the trial court's determination that appellants were estopped from asserting that the $15,000 note did not acquire priority.

First, there was substantial evidence for the court to find that appellants knew that respondent Sequoia would make the loan only if it were secured by the Sequoia Trust Deed. In fact, the evidence is practically uncontradicted that in late October or early November of 1959, Martin A. Najarian and

Leo P. Michaelides informed appellants that they needed an additional $15,000 to complete the construction of the Marlo Motel. They also told appellants that it would be possible to borrow the money from respondent Sequoia if they could use the Marlo property as security and if appellants would execute a subordination agreement.

Second, there was substantial evidence for the court to find that appellants knew that the loan would inure to their benefit. Respondents Michaelides-Najarian were going to use the money to complete the Marlo Motel and to enhance the value of the Marlo Motel property. Moreover, since the Reichert Trust Deed was already subordinate to a $110,000 lien, it was to appellants' advantage to have the project completed as expediently as possible.

Third, as we have already observed, the subordination agreement specifically identified the $15,000 note and recited that the note existed. Hence, the court could reasonably conclude that appellants knew or should have known the terms of payment and knew or should have known that respondents would rely on both their tacit promise to subordinate their trust deed and their approval of the note terms when the loan was made. The doctrine of promissory estoppel has been summarized as follows: "The promisor is bound when he should *reasonably expect* a substantial *change of position* (act or forbearance) in reliance on his promise, *if injustice can be avoided only by its enforcement*." (1 Witkin, Summary of Cal. Law (7th ed. 1960) § 85, p. 90.)

Appellants' contention that the subordination was ineffective because a new trust deed was not recorded is also untenable. The latter portion of the subordination agreement to which appellants refer clearly applies to future loans made upon completion of the building; the $15,000 loan was made prior to the completion of the building and in connection with expenses incurred in the initial construction. Moreover, the subordination agreement which expressly subordinated the Reichert Trust Deed to the additional loan granted by Sequoia Savings and Loan Association stated: ". . . *as evidenced by the promissory note and notice of additional loan hereinabove set forth.*" [Italics added.] Under this plain language the recordation of a new trust deed was neither required nor contemplated.

III—Error In Law

Appellants' contentions in support of their position that the court committed errors in law during the conduct of the

trial, resulting in a miscarriage of justice, are in the main picayune and aptly demonstrate the absurdity of raising such points in an appeal. For example, they assert that the court erred in allowing respondent Sequoia to examine respondent Martin A. Najarian as an adverse witness under former Code of Civil Procedure section 2055 (now Evid. Code, § 776) despite the fact that they were codefendants in the main action and that Martin A. Najarian was named a cross-defendant in respondent Sequoia's cross-complaint. As a further example, in one breath they claim that the court improperly admitted into evidence an unsigned copy of the subordination agreement offered by respondents and allege that it proved nothing, thereby conceding that it did not benefit respondents nor injure appellants in any manner. Paradoxically, they also complain that the court improperly refused to admit appellants' exact copies of the same exhibit. Moreover, they do not state how the refusal of their copies prejudiced them or curtailed cross-examination of the witness Louise Rogers as they claim. In any event, insofar as we have been able to ascertain from the record, these exhibits were never even offered into evidence by appellants. To obfuscate further, appellants assert that the court erred in allowing evidence of the work background and experience of Mr. Carpenson and testimony concerning his actions at the time of the construction of the Marlo Motel without indicating how this evidence harmed them.

Appellants' remaining contentions of errors in law deal primarily, if not exclusively, with the problem of relevance. Thus, we shall consider their arguments while keeping in mind that evidence is relevant if it has any tendency in reason to prove any material fact and that wide discretion is left to the trial judge in making the determination which will not be disturbed on appeal unless there is a clear showing of an abuse (*Larson* v. *Solbakken*, 221 Cal.App.2d 410 [34 Cal. Rptr. 450]).

(1) Appellants assert that the court erred in admitting the escrow instructions of November 27, 1959, and May 22, 1960, between appellants and Leo P. Michaelides and Martin A. Najarian pertaining to the assignment and reassignment of the Reichert Trust Deed and then compounded its error when it refused to admit parol evidence to explain the circumstances surrounding these instructions.

The escrow instructions were obviously admitted by the court on the issue of estoppel and ratification, i.e., to prove

that appellants knew that the Reichert Trust Deed was subordinate to the $110,000 and $15,000 notes and that they had taken the reassignment of this trust deed subject to the liens created by the notes. Thus, the court did not abuse its discretion when it admitted this evidence.

As to the refusal to admit appellants' parol evidence on this point, it is the rule that parol evidence is not admissible to explain a writing which is plain on its face and that the trial judge's determination on the issue is reviewable on appeal (*Wachs* v. *Wachs*, 11 Cal.2d 322 [79 P.2d 1085]; *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]). It is arguable that the escrow instructions standing alone are ambiguous and that parol evidence should have been admitted by the trial judge to explain the circumstances surrounding the making of these instructions. However, it is clear that appellants were not prejudiced by the court's refusal to admit parol evidence and that this factor was not critical to the final judgment. As we have indicated, the remaining evidence on the issue of estoppel is so convincing that it is unlikely that a different result would have been reached by the trial judge on this issue.

(2) Appellants argue that the court erred in admitting parol evidence to explain the subordination agreement pertaining to the $15,000 loan after having ruled that this agreement was not ambiguous. Appellants have failed to call our attention to the precise testimony of which they complain. If they are referring to the conversation which took place between appellants and Martin A. Najarian and Leo P. Michaelides before appellants executed the subordination agreement (we assume that they are), it is clear that these conversations were admissible on the issue of estoppel (to show appellants' knowledge of the agreement's terms). Furthermore, on direct examination appellant Carpenson testified in detail as to the extent and content of his conversation with Najarian and Michaelides. Thus, respondents were entitled to cross-examine and to introduce additional evidence in relation thereto.

(3) Appellants allege that the court erred in not allowing into evidence answers to numerous interrogatories submitted by appellants to Najarian and Michaelides. Yet neither the reporter's transcript nor the clerk's transcript on appeal contains the answers to these interrogatories. Moreover, appellants did not timely move the court to augment the record. Consequently, the answers to the interrogatories are not part of the record on appeal and this court cannot review the trial court's ruling.

(4) Appellant's arguments concerning the trial court's refusal to take judicial notice of the fraud and conspiracy action which they filed in Fresno County Superior Court against Karl Reichert and others and its refusal to admit testimony relating thereto are lacking in substance and no further comment is necessary.

Appellants' arguments in support of their contention that the court erred in allowing testimony as to the circumstances of the foreclosure sale are equally unconvincing. Moreover, they did not object to the testimony and it is settled that the failure to object to inadmissible evidence is a waiver of the defect (Witkin, Cal. Evidence (2d ed. 1966) § 1285, p. 1188).[4]

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

---

[4]Appellants simply objected to a question asked of Mr. Carpenson on cross-examination as to whether notice of sale had been given.