[Civ. No. 13241.  First Dist., Div. One.  Feb. 27, 1947.]

ERNEST TSANG, Respondent, v. JOHN KAN, Appellant.

Sidney A. Romer, Alden Ames and Hauerken, Ames & St. Clair for Appellant.

Robert E. Hatch for Respondent.

WARD, J.—This is an appeal by defendant and cross-complainant, John Kan, from a judgment and decree in an action for declaratory relief in which the trial court adjudicated that he is a limited partner in a certain restaurant business to the extent of 1,000/9,700 and has no right to be employed by the corporation originally operating said business; its successor, a partnership, or the plaintiff, Ernest Tsang, the gen-

eral partner and manager of the partnership. For convenience, the plaintiff and cross-defendant will be referred to as Tsang, and the defendant and cross-complainant as Kan.

On September 28, 1939, a restaurant business was incorporated under the laws of the State of California as the Cathay House, Inc. Kan and one Dr. Lee are the originators of the enterprise. Stock in the corporation was sold to a number of Chinese, including Tsang, who ultimately paid in about $5,500 of the $9,700 paid in capital. George Chew was the next largest stockholder, having paid $1,500. Kan and his wife together contributed only $1,100. Tsang became president of the corporation and Kan was made secretary. They received salaries of $300 a month, which were increased to $500 a month. In 1941, Kan ceased to be secretary of the corporation and continued as a director. On July 23, 1943, he enlisted in the armed forces of the United States and left San Francisco immediately. October 1, 1943, a limited partnership was created with Tsang as general partner and the other stockholders, including Kan and his wife, as limited partners—it being arranged that the partnership percentages as established in the articles of copartnership were the same as the percentages of ownership of stock in the corporation. Kan's wife signed her husband's name to the certificate of limited partnership upon the advice of Kan's attorney. Tsang secured a written contract of employment from the partnership for $750 a month commencing October 1, 1943, for the duration of the agreement of limited partnership. The minutes of the corporation reveal that the corporation assets were transferred to the limited partnership. The corporation was not dissolved. Kan was honorably discharged November 26, 1943.

October 21, 1944, Tsang filed a complaint for declaratory relief alleging that Kan made claims that Tsang individually and/or as president and general manager of the corporation and/or as general partner was obligated to employ Kan at Cathay House, and praying for a judgment and decree declaring and determining the rights and duties of the parties. Kan's answer admitted that there was a controversy between the parties and referred to his cross-complaint for the particulars of his claims. The first cause of action pleaded in the cross-complaint alleged that before Kan enlisted, Tsang agreed that upon Kan's return Kan should be restored to the position of comanager of Cathay House on an equal basis

with Tsang, and that since Tsang's salary was increased to $750 a month, he was entitled to be employed at $750 a month by virtue of the Selective Training and Service Act of 1940, as amended (50 U.S.C.A. App. §§ 301 et seq.), but that Tsang refused to employ him either at $750 or $500 a month; he alleged that he suffered damages in the sum of $750 per month for twelve months to the date of the filing of the cross-complaint or a total of $9,000, less what he has been able to earn, namely, $1,130, or an actual damage of $7,870.

The second cause of action pleaded in the cross-complaint alleged that Tsang deliberately promised to take Kan back after his return from miltary service, without any intention of performing such promise; that Tsang caused the corporation's business to be transferred to a limited partnership with himself as sole general partner, knowing that a limited partner could not be employed in the partnership without changing the relationship of the partners, which Tsang had no intention of permitting; that Tsang compelled Kan's wife, by duress and threats of injury to the interests of her husband, to sign her husband's name to a certificate of limited partnership; and that Kan suffered general damages in the sum of $25,000 by reason of Tsang's fraud in depriving Kan of his employment.

The trial court found that when Kan went into the Army he was getting $500 a month with no agreement, oral or written, for the continuation of his employment or for receiving a different rate of compensation in the future, and that within three months of his return he was offered the same position on the same basis, but he refused to accept the same and never offered nor was willing to return to said position. The trial court evidently believed Tsang's testimony, a portion of which follows: "Q. ... did Mr. Kan discuss with you the possibility or desirability of his returning to the Cathay House? A. He did. Q. And did you tell him one way or the other whether he would be acceptable as an employee? A. I did, on numerous occasions. Q. And what did you tell him in that regard? A. I told him that the position that he occupied formerly, at the same rate of salary, was open to him. ... As I recall it was the first day of Mr. Kan's return to San Francisco after his discharge. I was very suprised to see him that day. He came into the Cathay House—I had no knowledge that he

was coming in or was on furlough, or discharged. He came in to me, and he said, 'How about a job.' I said, 'O. K. Come back to work.' He said he first would like a vacation of about two weeks, to which I agreed. On or about December 15th, 1943, Mr. Kan and I had lunch . . . where he and I discussed —no one else was present—his return to the Cathay House. I informed him his position was open at $500 a month. He stated that he wanted $750 a month. I informed him that I had no power to give him $750 a month, and that my salary at that rate was set by the stockholders; but I felt I could offer him his $500 a month and I informed him if he insisted upon $750 a month I would have to consult the other stockholders, or one of the majority stockholders of the firm, which was Mr. George Chew. So we agreed to talk it over later, pending any conversation we might have had with Mr. George Chew concerning the matter. Mr. Kan came back to see me several days later and asked me if I had seen Mr. Chew, and I had not, because Mr. Chew was out of town. So I asked Mr. Kan, why don't you go down and see Mr. Chew. He might be back. He went down to see Mr. Chew, and came back about three-quarters of an hour later and asked me what this was all about, was I trying to give him a run-around, or what. I said, what did Mr. Chew say? And Mr. Kan informed me Mr. Chew did not agree to give him $750 a month, but was agreeable to him coming back to work at his former salary."

That Kan refused to return to his "same position on the same basis," is further seen in the testimony of Tsang's attorney to the effect that Kan refused to return to the Cathay House without a written contract covering several years' employment, although he had never had such a contract before he left to serve in the Army.

If the parties had entered into a contract under the terms of which Tsang was bound to take Kan back as comanager after Kan returned from the Army, Kan would be entitled to enforce such contract. Since the trial court found that Tsang offered to take Kan back, Tsang cannot be held to have breached any such contract. The question then arises, do the provisions of the Selective Training and Service Act of 1940 aid Kan?

Kan presents certain citations to the effect that the Selective Training and Service Act is to be construed liberally; that every consideration should be given to a serviceman;

that employees often include those in superior positions. It is not necessary to lengthen this opinion by commenting upon each of the cited cases. The reemployment provisions of the act, which are relied upon by Kan, are designed to enable a serviceman to be restored to the position he held before entering the armed forces. In the present case Kan does not seek reinstatement, but seeks damages from Tsang.

Kan contends that Tsang's terms that Kan sign a release, sign over his stock in Cathay House to his wife, and come back as an employee, violated the Selective Training and Service Act. The trial court's finding that Tsang offered to restore Kan to his same position indicates that the trial court considered that these "terms" did not alter the position which Kan had held before his enlistment. As to the matter of a release, Tsang's attorney testified that at a meeting held in his office shortly before this action was commenced he said "I thought it would be well for us to have some sort of a document—let's call it a mutual release, where John (Kan) agrees that he starts from scratch. . . . I have had experience in somewhat similar matters in the past, where after the lapse of time that people begin to imagine they have rights which they never thought they did before, so I said, 'Mr. Kan, have you any claims against Mr. Tsang of any kind—do you claim that you have got any right, any contract, or are there any agreements that have not been mentioned;' and he said absolutely none. I asked the same question of Mr. Tsang, and he gave the same answer." Such being the situation, the "release" had nothing to do with the Selective Training and Service Act or any rights Kan might have had thereunder. Tsang's request that Kan sign over his stock to his wife was evidently the result of *his* conception of the law of limited partnerships—that a limited partner could not manage. The last requirement was explained to Kan by Tsang's attorney as follows: ". . . you understand that if you are taken back that you will be an employee . . . and if your services are not satisfactory . . . the employer has the right to terminate your employment." The trial court found that during the time that Kan was an officer and employee of Cathay House, Inc., his terms of office and employment were at the pleasure of the board of directors.

The trial court's finding that "Within three months following [date of discharge] plaintiff [Tsang] and said partnership

offered to immediately restore defendant [Kan] to the same position which he had with the corporation . . . but defendant refused to accept the same,'' being supported by evidence, justifies an affirmance of the judgment against Kan on the first count of his cross-complaint.

The trial court found against Kan on the second count of his cross-complaint. Specific findings were made that Kan had consented to the formation of the partnership and that it was not true that Tsang had no intention of permitting Kan to participate in the partnership. These findings are not challenged.

Kan urges that the evidence supported the allegation that Tsang promised to take Kan back after his return from military service without any intention of performing such promise, and hence that recovery should have been granted on the second count. Kan relies upon Civil Code, section 1572, subdivision 4, which describes fraud as ''A promise made without any intention of performing it,'' within the meaning of the chapter in which that section appears. Said chapter relates to the freedom of consent of the parties to a contract. (*Harlow* v. *American Equitable Assur. Co.*, 87 Cal.App. 28, 32 [261 P. 499].) Such fraud may be the basis of defense to a suit on an executory contract and it may also be the basis of an action for rescission of a contract. (*Wilson* v. *Rigali & Veselich*, 138 Cal.App. 760, 765 [33 P.2d 455].)

In the present action Kan seeks to recover damages for what is described in the Civil Code as ''fraudulent deceit.'' The controlling sections are section 1709, which provides that ''One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers,'' and section 1710, which provides that a deceit within the meaning of the foregoing section is ''4. A promise, made without any intention of performing it.'' The element of damage must be established to recover under these provisions. (*Munson* v. *Fishburn*, 183 Cal. 206, 220 [190 P. 808]; *Gerini* v. *Pacific Employers Ins. Co.*, 27 Cal.App.2d 52 [80 P.2d 499].) In the language of *Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 571 [126 P. 351, 42 L.R.A.N.S. 125], ''It is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action.'' Assuming that at the time of Kan's enlist-

ment Tsang promised to take Kan back without intending to do so, it is difficult to see that Kan was damaged thereby. It nowhere appears that Kan joined the Army because of any such promise. Kan had made up his mind to enlist before he ever spoke to Tsang about it.

The allegation that Tsang compelled Kan's wife, by duress and threats of injury to the interests of her husband, to sign her husband's name to a certificate of limited partnership, is totally unsupported by the evidence. On the contrary, the evidence establishes that she acted upon the advice of Kan's attorney.

The judgment and decree is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 28, 1947.