[Civ. No. 21224. Second Dist., Div. Two. Jan. 17, 1956.]

N. MEYER BAKER, Respondent, v. ALFRED L. LITTMAN et al., Appellants.

Bertram S. Harris for Appellants.

F. J. Finucane for Respondent.

FOX, J.—Respondent filed an action in the Municipal Court of Los Angeles for the recovery of $1,024.53, alleged to be the reasonable value of legal services rendered at the request of defendants, who are the appellants herein. The defendants named are Alfred Littman, Harry Umann, and their respective spouses. After answering, each defendant individually filed a cross-complaint in excess of the jurisdiction of the municipal court and the cause was transferred to the superior court. Respondent filed a special demurrer to, and motion to strike, the cross-complaint of Alfred Littman. General demurrers and motions to strike were interposed to the cross-complaints of Mr. and Mrs. Umann and Mrs. Littman. Each of the demurrers was sustained without leave to amend and the motions to strike were ordered off calendar.

These appeals, prosecuted by the defendants and cross-

complainants, are from the several judgments dismissing each of the cross-actions.

The cross-complaint of Alfred Littman purports to state four causes of action. In the opening count, Alfred alleges that he and his five brothers and sisters are "residual beneficiaries" of a testamentary trust established in Washington, D. C., under the will of Elihu Horn; that respondent represented to him that he was the attorney for said brothers and sisters and had their consent to initiate legal proceedings against the life tenant and trustees of the trust estate; that based on this representation by respondent and the latter's solicitation of him to become a party plaintiff to such proceedings with his brothers and sisters, he authorized his name to be added as a plaintiff with the others; that the above representations were entirely false; that despite respondent's lack of authority from said brothers and sisters, respondent nevertheless prepared a lawsuit in which Alfred and his brothers and sisters were named as plaintiffs; that when Alfred learned of the fraud perpetrated upon him, he withdrew his consent to become a party plaintiff or to have any action instituted in his behalf; that respondent never instituted any legal proceedings on behalf of any of the residual beneficiaries; that Alfred never retained respondent's services; that respondent's services, if any, were retained by others and respondent knew that Alfred would never be called upon to pay for such services; that prior to the filing of respondent's suit against him, Alfred was a successful business man with a high credit standing in the community; that respondent instituted the within legal proceedings against him for the value of services rendered maliciously and with intent to harass him, and for purposes of coercing a settlement; and that as a direct result of respondent's conduct his business reputation and credit standing in the community were damaged in the sum of $50,000. Count III realleges the above facts and asserts as a direct result of defendant's conduct he was damaged in the sum of $500, which he was compelled to expend to overcome and defend the action fraudulently instituted by respondent.

Count II of Alfred's cross-complaint realleges the above facts and further alleges that as a direct result of respondent's conduct he "was compelled to expend large sums of money in protecting his equity in the said trust estate as a residual beneficiary," to his damage in the sum of $35,000. After realleging the above facts in Count IV, Alfred alleges

that as the result of respondent's conduct, his "share in the Elihu Horn Estate has diminished in value, the exact amount at this time being unknown."

The cross-complaint of defendant Harry Umann comprises two counts. Umann alleges that he is an attorney at law and that during the times stated in respondent's complaint defendant Alfred Littman was one of his clients; that Alfred Littman had consulted on matters connected with the trust estate with respondent, who was at that time attorney for Alfred's brother, Bernard, who was also a residual beneficiary; that this occurred long before Umann was consulted by Alfred Littman with respect to said trust estate; that respondent knew that Umann was merely Alfred's local attorney and was at all times acting as an agent for a disclosed principal; that prior to the filing of respondent's complaint against him he had an excellent professional reputation and a high credit rating in the community; that respondent instituted legal proceedings against him for money claimed due him for services rendered maliciously and with intent to harass him for the purposes of coercing a settlement of said claim; and that as a direct result of respondent's conduct he was injured in his professional reputation and credit standing in the sum of $50,000. Umann's second count realleges the above facts and further alleges $500 damages, the sum he was compelled to expend "to overcome and defend the action instituted fraudulently" by respondent.

The cross-complaints of Mrs. Littman and Mrs. Umann each contain three counts and are substantially similar. Count I alleges that each defendant was sued only because they were the respective wives of defendants Littman and Umann; that they never met respondent or authorized the procurement of his legal services; that the legal proceedings against them were maliciously instituted by defendant with the intent to harass them and force a settlement of his claim for services; and that they became ill and nervous as a result, to their damage in the amount of $10,000. Count II realleges the allegations of the malicious institution of respondent's action, and alleges damages in the amount of $500 expended "to overcome and defend the action instituted fraudulently" by respondent. Count III alleges that as the result of respondent's malicious institution of his action against them, their reputation and credit standing in the community have been destroyed, to their damage of $10,000.

### CROSS-COMPLAINT OF MR. AND MRS. UMANN AND MRS. LITTMAN

Directing attention first to the cross-complaints of Mr. and Mrs. Umann and Mrs. Littman, it is patent that the general demurrers were correctly sustained without leave to amend. The gist of these pleadings consists of the attempt to state a cause of action based on malicious prosecution of an ordinary civil action and to recover thereunder damages for injury to business reputation and credit standing, expenses incurred in defending the suit and, in the case of Mrs. Littman and Mrs. Umann, for illness and mental suffering. It is hornbook law that one of the essential elements of such a cause of action is that the prior litigation complained of shall have terminated in favor of the defendant therein, where, as here, the action upon which it is grounded is an ordinary civil action in which no process other than summons was issued. (*Metzenbaum* v. *Metzenbaum,* 121 Cal.App.2d 64. 68 [262 P.2d 596]; *Barrier* v. *Alexander,* 100 Cal.App.2d 497, 501 [224 P.2d 436]; *Schwartz* v. *Schwartz,* 25 Cal.App.2d 303, 304 [77 P.2d 260]; Prosser on Torts (2d ed. 1955), pp. 664-665.) No such allegation is made, nor can the cross-complaint be amended to state such fact, since the malicious prosecution alleged stems from the filing of the original complaint in the action before the court and there has obviously been no termination whatsoever of that action. The facts of the present case falling within the rule above stated, the orders sustaining the demurrers without leave to amend were properly made.*

It is contended that if not valid as cross-complaints, the cross-actions should have been considered by the court as counterclaims. Under the requirements of section 438, Code of Civil Procedure, a counterclaim may not be set up unless it constitutes an existing cause of action, the test being whether the defendant is able to maintain an independent action on the demand asserted as a counterclaim. (*Cuneo* v. *Lawson,* 203 Cal. 190, 196 [263 P. 530]; *McClendon* v. *Heisinger,* 42 Cal.App. 780, 783 [184 P. 52].) Appellants' argument is thus without merit because no cause of action for malicious prosecution based on the filing of re-

---

*Appellants state in their brief, without any supporting authority, that they have alleged causes of action for slander and libel. There is not the slightest suggestion of any unprivileged defamatory utterance on the part of respondent in the pleadings. Respondent's conduct, as alleged in this connection, consisted only of the filing of a civil action. Such a publication is absolutely privileged. (Civ. Code, § 47, subd. (2).)

spondent's action then existed, nor does it now exist, nor can it possibly accrue until respondent's present action terminates in their favor. Therefore, the court's action in dismissing these so-called counterclaims was correct.

■ There appears in appellant's brief the statement that respondent agreed to forward to Umann one third of any fee he collected in the trust estate litigation and that he breached this agreement, giving rise to a cause of action in Umann for breach of contract. These facts are entirely dehors the record. The pleadings contain no intimation of any such agreement. Obviously, to amend, Umann would have to allege facts showing a contract and a breach thereof by respondent, a cause of action different from the one on which he proceeded below and based on "a wholly distinct and different legal obligation against defendant." (*Klopstock* v. *Superior Court*, 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318].) It is well settled that a wholly different and distinct cause of action may not be set up in an amended complaint. (*Pagett* v. *Indemnity Ins. Co.*, 54 Cal.App.2d 646, 649 [129 P.2d 700]; *Cyr* v. *White*, 83 Cal.App.2d 22, 31 [187 P.2d 834].)

### The Cross-Complaint of Alfred Littman

The material allegations of Alfred Littman's cross-complaint, previously set out in detail, may be epitomized as follows: Alfred and his brothers and sisters are beneficiaries of the Horn trust estate. Respondent represented to him that he was the attorney for all his brothers and sisters with authority to file an action for them against the life tenant and trustees of the Horn trust. Relying on this representation, Alfred authorized respondent to add his name as plaintiff in the suit respondent prepared. Subsequently discovering that respondent was not attorney for all his brothers and sisters, Alfred ordered him not to sue in his behalf and respondent never instituted any legal proceeding for the trust estate. Further, Alfred alleged respondent knew he would never be obliged to pay for any legal services respondent might render. Based on this general set of facts, Alfred's first and third causes of action are bottomed solely on the theory of malicious institution of respondent's civil action for the value of services rendered, Alfred alleging in his first count that he suffered damage to his business reputation and credit standing and in his third count that he was compelled to expend $500 in defense of the action.

His second and fourth counts sound in deceit. The second

count alleges that as the result of respondent's conduct he was damaged in the sum of $3,500 which he was compelled to expend in protecting his equity in the trust estate. The fourth count alleges that respondent's conduct caused a diminution of the value of Littman's share of the trust estate in an amount as yet unascertained.

Respondent demurred specially to Littman's cross-complaint. Among the grounds of uncertainty specified in the special demurrer was that there were conflicts in the averments of the cross-complaint, that it could not be ascertained therefrom in what manner Littman relied upon the representation to his damage, nor in what manner the respondent did anything other than exercise his legal right in filing a lawsuit against Littman. The court sustained this demurrer without leave to amend.

While the special demurrer was well taken and properly sustained, it was error not to afford Littman an opportunity to amend with respect to Counts II and IV. ■ Where a complaint is not fatally defective in the statement of a cause of action, it is improper to sustain a special demurrer without leave to amend if the uncertainties and ambiguities can be corrected by amendment. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 718-720 [128 P.2d 522, 141 A.L.R. 1358] ; *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747].) ■ It is of course true that a fraudulent representation which is not the cause of damage is not actionable. (*Maynes* v. *Angeles Mesa Land Co.,* 10 Cal.2d 587, 590 [76 P.2d 109] ; *Tsang* v. *Kan,* 78 Cal.App.2d 275, 281 [177 P.2d 630] ; 12 Cal.Jur., § 69, p. 813.) ''It is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action. Therefore, it is but a truism to say that if one party by fraud has been induced to enter into a contract executory as to both parties and nothing whatsoever is done under that contract, he has ordinarily suffered no injury therefrom.'' (*Walter Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 571 [126 P. 351, 42 L.R.A.N.S. 125].) In the instant pleading, Littman alleges that he discovered that respondent was not attorney for his brothers and sisters, as falsely represented, that he therefore withdrew his consent to be joined in the lawsuit prepared by respondent, and that the lawsuit was never filed. With only these facts to guide us, it is difficult to perceive how Littman's reliance on the false representation caused him the damage alleged. ''It must

be shown in the pleading that the damage claimed was sustained by reason of fraud and should show the relation between the fraud and the damage alleged; that is, it must appear that the fraud and the damage sustain to each other the relation of cause and effect.'' (*Woodson* v. *Winchester*, 16 Cal.App. 472, 476 [117 P. 565]; *Swasey* v. *de L'Etanche*, 17 Cal.App.2d 713, 719 [62 P.2d 753].) As has been remarked, the special demurrer was advisedly sustained because of uncertainty. But although the cross-complaint is poorly drawn and consequently vulnerable to a special demurrer, we cannot conclude from an inspection thereof that Littman would be unable. to amend it so as to eliminate its present uncertainty and state causes of action for fraud. The trial court should, therefore, have afforded Littman at least one opportunity to amend Counts II and IV of the defective pleading.

A different situation prevails in connection with Counts I and III, whose gravamen is the recovery of damages for the malicious institution of a civil proceeding. It is apparent from the facts alleged and the state of the record that no cause of action can possibly be stated to cure its vital defect, namely, the failure to allege a final termination in Littman's favor of respondent's original action. (*Metzenbaum* v. *Metzenbaum*, 121 Cal.App.2d 64, 68 [262 P.2d 596]; *Barrier* v. *Alexander*, 100 Cal.App.2d 497, 501 [224 P.2d 436]; *Schwartz* v. *Schwartz*, 25 Cal.App.2d 303, 304 [77 P.2d 260].) That action has yet to be tried. There being no circumstances under which an amendment to those counts could serve any useful purpose, the order of the trial court sustaining the demurrer to those counts without leave to amend was without prejudice. (*A. L. Young Machinery Co.* v. *Cupps*, 213 Cal. 210, 219 [2 P.2d 321]; *Routh* v. *Quinn*, 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215].)

For the foregoing reasons, the judgments of dismissal entered upon the orders sustaining the demurrers to the cross-complaints of Harry Umann, Jane Doe Umann and Jane Doe Littman are affirmed. The judgment of dismissal entered upon the order sustaining the demurrer to the cross-complaint of Alfred Littman is affirmed as to Counts I and III thereof; as to Counts II and IV, the judgment is reversed with directions to permit an amendment thereof, if the cross-complainant be so advised. As to the Alfred Littman judgment, the costs on appeal shall be equally divided between him and respondent.

Moore, P. J., and Ashburn, J., concurred.