[S.F. No. 22761. In Bank. Jan. 15, 1971.]

LEONA O. BABB et al., Petitioners, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
ROBERT S. HUNTINGTON, Real Party in Interest.

## COUNSEL

Timothy J. Crowley, in pro. per., for Petitioners.

Jack H. Werchick as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson, Kenneth E. Nussbaum and John C. Shaffer, Jr., for Real Party in Interest.

## OPINION

**SULLIVAN, J.**—The question confronting us here is whether a defendant in a civil action may file a cross-complaint therein seeking a declaratory judgment that the action is being maliciously prosecuted. We have concluded that precedent, principle, practicality and policy forbid such a cross-complaint, which entails the risk of discouraging legitimate claimants and, at least in the instant case, pits plaintiff and her attorney against each other as adversaries.

The present petition arises out of an action for damages for medical malpractice brought by Leona O. Babb, through her attorney Timothy J. Crowley. In the instant proceedings Mrs. Babb and Mr. Crowley are petitioners and Dr. Huntington is the real party in interest. In the underlying action, Dr. Huntington filed an answer to Mrs. Babb's third amended complaint and at the same time, a cross-complaint,[1] against both Mrs. Babb

---

[1]While entitled a "cross-complaint," defendant's pleading obviously fails to satisfy the requirement of section 442 of the Code of Civil Procedure that a cross-complaint relate to or depend upon the "contract, transaction, matter, happening or accident upon which the action is brought. . . ." The plaintiff's complaint concerns alleged medical malpractice. The subject of the "cross-complaint" is the allegedly wrongful institution of plaintiff's action. Even under a liberal view of the transaction clause of section 442, these are too unrelated to permit a cross-complaint. "The connection between the two is not that of substance but of historical sequence. There is, of course, a thread of sequence in the sense of the common expression, 'One thing led to another,' but there is no agreement between the subject matter of plaintiff's action and that of defendant's [cross-complaint] in interest or substance or similarity of causes." (*Manufacturers & Jobbers Finance Corp.* v. *Lane* (1942) 221 N.C. 189 [19 S.E.2d 849, 852].)

The cross-action also fails to qualify as a counterclaim. Section 438 of the Code of Civil Procedure provides that a counterclaim "must *exist* in favor of a defendant and against a plaintiff. . . ." (Italics added.) But, as will be discussed, *infra,* the malicious prosecution claim does not "exist" until the original malpractice action has terminated in favor of defendant. "It is contended that if not valid as cross-

and her attorney Mr. Crowley seeking a declaratory judgment that (1) in the event that the malpractice action terminated favorably to him, Mrs. Babb and attorney Crowley be adjudged to have instituted and prosecuted it maliciously and without probable cause; and (2) in such event he be entitled to recover costs and attorneys' fees expended in the action.[2]

Petitioners demurred generally to the cross-complaint, contending that a favorable termination of the prior proceeding is a necessary precondition to the maintenance of a malicious prosecution action. Although it recognized this long-standing rule of law, the trial court nevertheless overruled the demurrer on the ground that the cross-complaint was not premature since it sought only declaratory relief. Petitioners seek a writ of prohibition to prevent the trial court from proceeding with the malicious prosecution cross-action.

It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor. (*White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 349 [66 Cal.Rptr. 697, 438 P.2d 345]; *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]; *Berson* v. *Ewing* (1890) 84 Cal. 89, 92 [23 P. 1112].) The rationale for this require-

---

complaints, the cross-actions should have been considered by the court as counterclaims. Under the requirements of section 438, Code of Civil Procedure, a counterclaim may not be set up unless it constitutes an existing cause of action, the test being whether the defendant is able to maintain an independent action on the demand asserted as a counterclaim. [Citations.] Appellants' argument is thus without merit because no cause of action for malicious prosecution based on the filing of respondent's action then existed, nor does it now exist, nor can it possibly accrue until respondent's present action terminates in their favor." (*Baker* v. *Littman* (1956) 138 Cal.App.2d 510, 514-515 [292 P.2d 595].)

The fact that the cross-complaint was framed as one for declaratory relief does not alter this requirement of an "existing" cause of action. As we discuss further, *infra*, section 1060 of the Code of Civil Procedure, the declaratory judgment provision, authorizes actions for declaratory relief only in the form of complaints and cross-complaints; declaratory relief in the form of a counterclaim is not provided for. Consequently, there can be no such creature as a counterclaim for declaratory judgment; to be a valid counterclaim, a cause of action must exist when the cross-action is filed.

Consequently, Dr. Huntington's cross-action is a procedural anomaly which satisfies the requirements of neither a cross-complaint nor a counterclaim.

[2]Although Dr. Huntington's pleading is somewhat ambiguous on the issue, it appears to contemplate that evidence on both the medical malpractice and the malicious prosecution claims would be introduced in the same trial, and the jury instructed to reach a verdict on the malicious prosecution action only if its verdict in the malpractice suit is favorable to Huntington. However, at oral argument counsel contended that the trial court might utilize its discretion under section 1048 of the Code of Civil Procedure to order separate trials on the issues of malpractice and malicious prosecution, the latter being set for trial only if trial of the former terminated favorably to defendant. (See fn. 3, *infra*.)

ment was stated by this court 30 years ago: "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge . . . against an innocent person. If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge." (*Jaffe* v. *Stone, supra,* 18 Cal.2d 146, 150.) Although the original proceeding in *Jaffe* was criminal, the gist of the statement is equally applicable to cases, like the one at bench, where the main action is civil.

Because of this requirement, it is obvious that a defendant cannot cross-complain or counterclaim for malicious prosecution in the first or main action (*Baker* v. *Littman, supra,* 138 Cal.App.2d 510, 514; 2 Witkin, Summary of Cal. Law (1960) Torts, § 97, p. 1268), since a claim cannot state a cause of action at that stage of the proceedings. This appears to be the rule, not only in California, but generally. (*Luckett* v. *Cohen* (S.D. N.Y. 1956) 169 F.Supp. 808, 810; *Ivey* v. *Daus* (S.D.N.Y. 1955) 17 F.R.D. 319, 323; *Alexander* v. *Petty* (1954) 35 Del.Ch. 5 [108 A.2d 575, 577]; *Niedringhaus* v. *Zucker* (Mo. 1948) 208 S.W.2d 211, 211; *Manufacturers & Jobbers Finance Corp.* v. *Lane, supra,* 19 S.E.2d 849, 852; Prosser on Torts (3d ed. 1964) § 114, p. 873, fn. 32.) One contrary case, *Herendeen* v. *Ley Realty Co.* (Sup. Ct. 1947) 75 N.Y.S.2d 836, has not been followed, even in New York.

The requirement of a favorable termination of the principal litigation before institution of a malicious prosecution action is supported by conceptual, practical, and policy reasons.

First, there is a certain metaphysical difficulty in permitting a counterclaim for malicious prosecution since theoretically that cause of action does not yet exist. (See fn. 1, *ante.*) ▮ The principle is well established that the cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously. (*Oppenheimer* v. *Tamblyn* (1958) 162 Cal.App.2d 293, 297 [327 P.2d 574].) A logical corollary of that principle is the rule, long recognized by this court, that the statute of limitations begins to run on the date that the proceedings in the prior action were dismissed or terminated. (*Goland* v. *Peter Nolan & Co.* (1934) 2 Cal.2d 96, 98 [38 P.2d 783]; *Berson* v. *Ewing, supra,* 84 Cal. 89, 92-93.) Were we to entertain a cross-action for malicious prosecution, we would create the incongruous situation of such an action being filed long before the statute of limitations begins to run.

Second, the requirements of practical judicial administration dictate the

retention of the "favorable termination" rule. It prevents the inconsistent judgments which may result if a malicious prosecution action were permitted to be filed before the conclusion of the principal suit. In such a situation, with two triers of fact operating independently, the plaintiff in the main action may prevail in his claim, yet lose the malicious prosecution suit. ■ Furthermore, the rule tends to eliminate unnecessary litigation, for a defendant who loses in the principal action will not institute a malicious prosecution suit, since the adverse judgment operates to establish conclusively that the plaintiff had probable cause. (*Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 178.) Finally, the "favorable termination" requirement facilitates speedy and orderly trials, because the other elements of the cause of action (malice and lack of probable cause) are substantially easier to determine with the record of the underlying action available as evidence.[3]

Third, the rule of favorable termination is supported by strong policy considerations. ■ Since malicious prosecution is a cause of action not favored by the law (*Sebastian* v. *Crowley* (1940) 38 Cal.App.2d 194, 202 [101 P.2d 120]; Note (1949) 58 Yale L.J. 490, 494), it would be anomalous to sanction a procedural change which not only would encourage more frequent resort to malicious prosecution actions, but would facilitate their use as dilatory and harassing devices. Abolition of the requirement that malicious prosecution suits be filed as separate actions after termination of the main litigation would surely increase the incidence of such suits, since filing a cross-action requires less time, expense, and preparation than does initiation of a separate action. Furthermore, the introduction of evidence on the issues of malice and probable cause may prejudice the trier of fact against the plaintiff's underlying complaint, or enhance the possibility of a compromise verdict. Even if, as here requested, consideration of those issues is deferred until the principal action has been completed, an outcome of that trial adverse to the plaintiff may unduly enhance the defendant's chances in his malicious prosecution action. Finally, as was the case here, the plaintiff and his attorney may be joined as cross-defendants in the

---

[3]Dr. Huntington contends that these practical considerations are circumvented by the form of his cross-action, i.e., one for a declaratory judgment "should the action for malpractice . . . be terminated in favor of cross-complainant." In particular, counsel at oral argument claimed that such problems are obviated by the trial court's power, under section 1048 of the Code of Civil Procedure, to order separate trials of the issues in the complaint and cross-complaint. (See fn. 2, *ante.*) However, there is nothing in the record to assure us that the trial court would utilize this protective device, which, by the very terms of that code section, is left to the court's discretion. (See *Carpenson* v. *Najarian* (1967) 254 Cal.App.2d 856, 862 [62 Cal.Rptr. 687].) If separate trials were not ordered, presumably evidence on the issues of both malpractice and malicious prosecution would go to the jury simultaneously. Although this might eliminate the possibility of inconsistent judgments, the other problems described above would remain.

malicious prosecution suit. This not only places the attorney in a potentially adverse relation to his client, but may well necessitate the hiring of separate counsel to pursue the original claim. (See Note, *supra*, 58 Yale L.J. 490, 493 and fn. 13.) The additional risk and expense[4] thus potentially entailed may deter poor plaintiffs from asserting bona fide claims.

We can conceive of no reason why the simple and—one would have thought—transparent expedient of casting the cross-complaint in the form of a request for declaratory relief should make any difference. Certainly most, if not all, of the problems outlined above would remain. The identical issues of malice and probable cause would, of necessity, be litigated, and their inclusion, even by indirect reference, as part of the trial of the cause of action for malpractice would involve a substantial risk of confusing or even influencing a jury.

Nor is there any particular need to employ the declaratory judgment procedure in this situation. ■ The purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach. "[D]eclaratory procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." (*Travers* v. *Louden* (1967) 254 Cal.App.2d 926, 931 [62 Cal.Rptr. 654]; see *Bachis* v. *State Farm Mutual Auto. Ins. Co.* (1968) 265 Cal.App.2d 722, 727-728 [71 Cal.Rptr. 486].) No such preventive benefit is possible here.

Dr. Huntington urges, however, that we should follow the example of indemnity cases, where we permit a defendant to file a cross-complaint seeking declaration of his right to indemnity from third persons as part of the very suit in which his own liability is being determined. He cites, for example, *Rimington* v. *General Accident Group of Ins. Cos.* (1962) 205 Cal.App.2d 394 [23 Cal.Rptr. 40] and *Sattinger* v. *Newbauer* (1954) 123 Cal.App.2d 365 [266 P.2d 586]. The trial court also relied on the indemnity analogy in overruling petitioners' demurrer.

---

[4]Damages potentially recoverable in a malicious prosecution action are substantial. They include out-of-pocket expenditures, such as attorney's and other legal fees (*Stevens* v. *Chisolm* (1919) 179 Cal. 557, 564-565 [178 P. 128]); business losses (*Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]); general harm to reputation, social standing and credit (*id.*); mental and bodily harm (*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 495 [289 P.2d 794]); and exemplary damages where malice is shown (*MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 293 [79 Cal.Rptr. 707]; *Metzenbaum* v. *Metzenbaum* (1953) 121 Cal.App.2d 64, 69-70 [262 P.2d 596]).

Although such cases present a surface similarity to the instant claim, in that they allow a defendant to seek a declaration of rights before his own obligation has been adjudged, they differ in several important respects. For one thing, since the cross-complaint for declaratory relief in such actions is usually brought against someone other than the original plaintiff, it is unlikely to have the deterrent and harassing effect of a malicious prosecution cross-action brought against the plaintiff in the underlying action. For this same reason, our concern that the plaintiff's attorney will be named as a defendant in the malicious prosecution claim, and will thus become a potential adversary of his client, is inapplicable to indemnity cross-complaints. Finally, since an indemnity claim usually arises out of the same transaction as the principal action at issue,[5] the same evidence is relevant to both. (*Rimington* v. *General Accident Group of Ins. Cos.,* *supra,* 205 Cal.App.2d 394, 397; *Sattinger* v. *Newbauer, supra,* 123 Cal. App.2d 365, 369.) This is not the case in a cross-action for malicious prosecution, where evidence produced in the cross-action would be aimed at the motives and state of mind of the original plaintiff, rather than the substantive issues of that original action. For all these reasons, the indemnity analogy is not persuasive.

Dr. Huntington also relies on *Munson* v. *Linnick* (1967) 255 Cal. App.2d 589 [63 Cal.Rptr. 340, 27 A.L.R.3d 1104], which was cited by the trial court, as authority for the instant cross-action. In *Munson* the plaintiff sought, in a single action, to set aside a fraudulently obtained default judgment against himself, to have entered a judgment in his favor in that prior action, and to obtain a declaration that the earlier suit had been maliciously prosecuted. The resultant judgment in favor of the plaintiff on all issues was upheld by the Court of Appeal, even though, at the time the malicious prosecution claim was filed, there had been no termination in his favor in the principal action. Consequently, we are urged that *Munson* supports the procedural device attempted to be employed by Dr. Huntington here.

We disagree because we find *Munson* distinguishable on several grounds. The *Munson* parties had *stipulated* in a joint pretrial statement that, in the event that the prior default judgment was set aside and an opposite judgment entered, one of the issues to be decided was whether the former

---

[5]Otherwise, of course, it would fail to satisfy the requirements of a cross-complaint. (Code Civ. Proc., § 442.) As a valid cross-complaint, the indemnity cross-action may properly take the form of a request for declaratory relief. (Code Civ. Proc., § 1060.) By contrast, since the instant cross-action does not qualify as a cross-complaint (see fn. 1, *ante*), a claim for declaratory judgment is statutorily unauthorized. (See fn. 1, *ante,* and *infra.*)

action had been maliciously prosecuted. Here, there was no such stipulation. Furthermore, the defendant in *Munson* had not objected to this arrangement in the trial court, but had raised the issue for the first time on appeal; thus, the Court of Appeal implied, he had waived his objection. Obviously no waiver occurred in the case at bench. Finally, *Munson* involved a separate, independent complaint and was thus at least procedurally correct under the declaratory judgment statute. (Code Civ. Proc., § 1060.)

■ Although the trial court in the instant action recognized that there were procedural differences between this suit and *Munson,* it relied on dictum in *Munson* which appears to authorize the granting of a declaratory judgment for malicious prosecution before the prior suit is terminated.[6] This language may well have induced the filing of the cross-complaint in the instant case, and to prevent reliance on such language in the future, we hereby disapprove it.

Having concluded that the trial court erred in overruling petitioners' demurrer, we must now consider whether an extraordinary writ is the appropriate remedy by which to challenge such error. Petitioners sought a writ of prohibition, and we issued an alternative writ of prohibition. Although prohibition may be properly available, we feel that under the circumstances mandate is a more appropriate remedy and that petitioners have made out a case entitling them to such writ. Accordingly we treat the petition as one for mandate and we order the issuance of a peremptory writ. (*Powell* v. *Superior Court* (1957) 48 Cal.2d 704, 705 [312 P.2d 698].)

The Code of Civil Procedure provides that mandate "may be issued . . . to compel the performance of an act ·which the law specially enjoins"

---

[6]The trial court quoted approvingly the following excerpt: "Assuming, as contended by defendant, the award of damages was premised upon liability under a malicious prosecution theory, the fact that at the time the declaratory relief action was filed a determination of the Singer action favorable to plaintiff had not been made did not foreclose the court in the declaratory relief action from determining the rights of the parties under the facts existing at the time of judgment. An action for declaratory relief is equitable in nature. A court of equity will make a complete determination of the controversy between the parties to such an action in accord with the facts as they exist at the time of its decree. [Citations.] The allegations in the complaint of lack of probable cause, malice and abuse of judicial process adequately advised defendant of the basis of plaintiff's claim for damages; that this claim was dependent upon a favorable termination of the Singer action; and would be adjudicated in the event the default judgment was set aside and a judgment favorable to Munson was obtained in that action." (*Munson* v. *Linnick, supra,* 255 Cal.App.2d 589, 594-595.)

(§ 1085) where "there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (§ 1086.) ██ Although it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way. (*Hilmer* v. *Superior Court* (1934) 220 Cal. 71, 73 [29 P.2d 175].) ██ Here the trial court had no discretion to overrule petitioners' demurrer to the malicious prosecution cross-complaint, which on its face was legally defective in two particulars: first, it failed to plead a favorable termination of the main action; second, it ignored a basic statutory limitation on the availability of declaratory relief—that such relief is restricted to complaints and cross-complaints. (Code Civ. Proc., § 1060.) Defendant's pleading is clearly not an original action. Nor, as discussed in footnote 1, *ante,* can it be considered a cross-complaint, since it does not satisfy the transactional requirement of section 442 of the Code of Civil Procedure. Consequently, the trial court was under a legal duty to sustain petitioners' demurrer, and it may be directed to do so by a writ of mandate. The absence of another adequate remedy was determined by this court when we granted the alternative writ. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; *Erlich* v. *Superior Court* (1965) 63 Cal.2d 551, 557 [47 Cal.Rptr. 473, 407 P.2d 649].)

We wish to emphasize, however, that our action in this matter should not be understood to indicate our willingness to employ the prerogative writs to review rulings on pleadings. Indeed, we perform such a function of intermediate review with extreme reluctance. "In most . . . cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment." (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) ██ However, upon occasion our attention is drawn to instances of such grave nature or of such significant legal impact that we feel compelled to intervene through the issuance of an extraordinary writ. (See *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 301, fn. 4 [90 Cal.Rptr. 345, 475 P.2d 441].) ██ The instant action, with its potential for throwing open the courtroom doors to malicious prosecution cross-actions, is such a case. ██ Accordingly, although we grant relief to these petitioners, we emphasize that this court will hereafter refuse to entertain petitions for prerogative writs to review rulings on pleadings unless the circumstances are as indicated above.

██ The alternative writ of prohibition is discharged. Let a peremptory

writ of mandate issue, commanding the trial court to vacate its order overruling petitioners' demurrer to the cross-complaint and to sustain said demurrer without leave to amend.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.