Filed 7/6/21  Smith v. Scheu CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NICOLETA SMITH,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DEAN JILL SCHEU<br>    Defendant and Appellant. | B301189<br><br>(Los Angeles County Super. Ct. No. 19PDRO01189) |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Dodson, Commissioner.  Affirmed.

Dean Scheu, in Pro. Per.,  for Defendant and Appellant.

Law Offices of Charles O. Agege for Plaintiff and Respondent.

## INTRODUCTION

Nicoleta C. Smith filed a request for a civil harassment restraining order under Code of Civil Procedure section 527.6,[1] alleging that her next-door neighbor, Dean Gill Scheu,[2] engaged in a pattern of conduct that constituted harassment of Smith and her family members. Smith alleged that Scheu and his wife accused Smith's dog of killing Scheu's dog; constructed a shrine to the dead dog that accused Smith of being a dog killer; mocked and filmed Smith and her teenage daughter after the Smiths' dog was let out of their yard (possibly by the Scheus); made a threatening move toward Smith's daughter with a truck, as if to run her over; called child protective services to falsely report drug use in the Smith home; and called animal control on the Smiths multiple times. The court issued a three-year civil harassment restraining order, and Scheu appealed.

We affirm. Substantial evidence supports the court's finding that Scheu's course of conduct constituted harassment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2019, Smith filed a request for a civil harassment restraining order against Scheu, requesting protection for herself; her 13-year-old daughter, Tia S.; her adult son, Christopher S.; and her son's girlfriend, Stella W. Smith noted that she and Scheu had been next-door neighbors for 10 years. In the section on the form asking why protection was needed, Smith wrote, "Neighbor has been harassing my family

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] In some places in the record, appellant's name is spelled Dean Jill Scheu.

over smoking in our back yard, over his dog attacking our dog and now he tried to run my daughter over and our dog over with his truck!" Smith stated that the latter incident occurred on August 22, 2019, and no one was injured because Tia was able to move out of the way of the truck.

In additional descriptions of the harassment, Smith stated, "(1) He has been calling the police regarding smoking in our back yard [¶] (2) He has been calling the police regarding cameras installed on my own house! [¶] (3) He tried to run my daughter over on 8/22/19 [¶] His wife erected a shrine with my address on it because her dog died after her dog attacked my dog. Her dog was loose in violation of Burbank Municipal Code 5-1-1001A. The shrine was moved from front yard to side of the house for me to see!" Smith noted that there had been "[c]onstant harassment since 06/27/2019 over one issue or another." She asked that the civil harassment restraining order include an instruction that Scheu stay away from Smith's dogs and vehicles. The court issued a temporary restraining order on September 3, 2019, and set a hearing for September 24, 2019.

At the hearing on September 24, 2019, Smith testified that on August 22, she arrived home to find that the gate to her yard had been opened and Tia's dog was loose. Smith noted that the iron gate could only be opened by a person. Smith went inside to ask Tia and Stella to help her find the dog. She testified that as they "went outside in the front yard, Mr. Scheu and his wife were there taking pictures, laughing at us, mocking us, saying 'A ha, ha, ha, your dog is on the loose.'"[3] Tia also testified that Scheu and his wife were laughing about the dog being loose. Tia

_____

[3]Scheu's wife's name is not in the record on appeal.

3

testified that she approached Scheu and his wife to see if they had seen her dog.

Smith testified that she saw Tia approach Scheu and his wife to ask about the dog, and "he and his wife get into his truck, and my daughter [Tia] was asking questions, and his wife was flipping my daughter off. [¶] And he proceeded to start his car and stop abruptly while my daughter was in front of his truck. And that was very scary to me." The court asked questions, and Smith clarified that Tia was on the sidewalk, the truck was facing the street, and the truck stopped about five feet away from Tia. Smith said that Tia moved out of the way, and Scheu and his wife left.

Tia testified that Scheu and his wife got into the truck, "[a]nd then he like jerked his car forward at me, which really scared me. And then I heard my brother's girlfriend pointing across the street to where my dog was. So I ran over to my dog. And then he like got out of the driveway really quick, and he tried – I mean, I don't know if he was trying to hit my dog, but it seemed like he was really close to almost hitting my dog, which scared me over even [*sic*] more. And, of course, I was already crying and shaking and super scared at that point." In response to questioning from the court, Tia clarified that the dog was in the street, returning to the house, when Scheu's truck came close to it.

Smith also testified that Scheu's "family has been harassing my family" by contacting animal control to complain about their dogs, having police come to the home, and telling the Los Angeles County Department of Children and Family Services (DCFS) that there were drugs in the home. Smith showed the court a document from DCFS stating that as of September 12,

4

2019 "your referral has been closed" because "the allegation of child abuse and/or neglect" was deemed unfounded. Smith further testified that she found Scheu's trash in her trash cans, including his mail that was visible through the trash bag, which violated a Burbank ordinance.

Smith said that at the "end of June," Scheu's dogs were loose and "[t]he dogs came and attacked on my property. My dog turned around. One dog bit. The other dog bit. His wife claims that their dog passed away four days later." After that, Scheu and his wife "erected a shrine in front of their house" that said, "Next-door neighbor killer dog," and had Smith's address on it. Smith testified that after a hearing for a restraining order against Scheu's wife, which was denied, Scheu and/or his wife moved the shrine "[s]o when I go outside my house on the balcony, it's there every day for me to see their dead dog." Smith submitted a copy of an email chain showing that she agreed to a mediation through the Burbank Animal Shelter, but Scheu refused to meet.

Scheu also testified at the hearing. He stated that he had lived in his home in Burbank for 30 years, but he had a second residence in New York. He said that on July 21 or 22, a Burbank police officer called him while he was in New York and told him that the neighbor was accusing Scheu's wife of putting nails in her car's tires. Scheu said the nails could not have been caused by him or his wife, because they were in New York at the time. Scheu also said that Smith's dog "killed my service dog, and I sent a demand letter on July 25th." The July 25, 2019 letter, which Scheu submitted as evidence, stated that Smith's two dogs "maliciously & intentionally attacked our small dog Karma on my property," and she later died from infections from the wounds.

5

The letter demanded $2,476.06 in medical bills, and $7,000 for "Jack Russell Terrier replacement & service dog training." Scheu stated that he "never heard anything back from the demand letter," so "we hit her with a small claims suit."

Scheu asserted that despite Smith's claim that he was "basically trying to murder" Tia, the Burbank Police Department's record from August 22, 2019 showed only a complaint that the neighbors purposely let the dog out of the yard. He submitted a printout displaying the heading, "Detailed History for Police Event #BP19234021," which notes an "entry" stating, "RP WAS DENIED RESTR ORDER AGAINST NEIGHBOR TODAY AND BELIEVES SHE PURPOSELY OPENED HER GATE TO LET HER DOG OUT." Scheu argued that if someone tried to run over his daughter, "I would be down at the police department raising holy heck."

Scheu also stated that on September 1, ten days after the incident with the dog being let out, there was a car parked in front of Smith's residence with a placard reading "Legal Angels." Scheu submitted photographs of the car. He asserted that an internet search showed that Legal Angels "is a monitoring service for children," and "[t]hey know legal laws in [*sic*] minors." Scheu stated that the dog incident occurred on August 22, Smith "meets with Legal Angels" on September 1, then Smith filed the request for a restraining order on September 3 "after meeting with this woman."

Scheu testified that Smith's complaints were "all fabricated," and the incident with the truck "did not happen, plain and simple." He further stated, "I don't know where they're – they're trying to fabricate something for the court case that's coming up in October, on 8:30 [*sic*]. They were unsuccessful on

getting a T.R.O. on my wife. [¶] Now, they're fabricating – or what I feel is that they're trying to commit a conspiracy to really – for where we're at today."

The court asked Smith if she had a response, and Smith testified that they had lived next to each other peacefully for ten years before Scheu married his current wife. Trouble began because Scheu's wife kept letting her dogs out off-leash. Smith also stated that when she attempted to get a restraining order against the wife, the court admonished the wife that no further incidents should occur. Regarding the nails in the car tires, Smith stated that three of her family members' cars suddenly had nails in the tires, and there was no construction in the area that could explain it. Tia explained that Legal Angels was a court-ordered monitoring service that assisted with visitation with her father.

The court took a brief recess to review the evidence submitted by the parties. The court then granted Smith's request for a restraining order, including protection for Smith, Tia, Christopher, Stella, and an order not to bother or harass the Smiths' dogs. The three-year restraining order barred Scheu from contacting, harassing, or intimidating the protected persons, and to stay away from the protected persons except while home "or going to and from your home." The court stated, "So the request is to simply be peaceable. Be civil."

Scheu filed a notice of appeal the same day.

## DISCUSSION

Scheu, appearing in propria persona, asserts three arguments as to why the restraining order should be reversed: "lack of clear and convincing evidence," "documentary evidence suppressed by court," and "abuse of process." Smith asserts that

7

it is "crystal clear that the trial court did not abuse its discretion," and the court's finding was supported by substantial evidence. We find no error.

We review a trial court's decision to issue a restraining order for substantial evidence. (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.) "The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "[W]hether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review." (*Ibid.*)

Civil harassment restraining orders are governed by section 527.6, which states in part, "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." (§ 527.6, subd. (a)(1).) As defined in the statute, "harassment" includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.*, subd. (b)(3).) A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (*Id.*, subd. (b)(1).) If, after a hearing, "the judge finds by clear and

8

convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Id.*, subd. (i).)

Scheu asserts there was a lack of clear and convincing evidence to support the restraining order because "during the cool off period (September 3 – 24, 2019) of the TRO [Scheu] showed no involvement of any physical harassment." He also asserts that he "never engaged in unlawful violence or harassment that is in the record after September 3, 2019."

Scheu's briefing does not articulate the basis for his contention that the court's consideration should have been limited to events after September 3, 2019—the date the court issued the temporary restraining order. We have found no authority supporting this assertion. To the contrary, section 527.6 provides that a restraining order is appropriate when the respondent engages in a "course of conduct" over an undefined "period of time, however short" it may be. (§ 527.6, subd. (b)(1).) Nothing in the statute limits that period to the time post-dating the filing of a request for a restraining order, or only while a temporary restraining order is in place.

Moreover, the Court of Appeal rejected a similar argument in *R.D. v. P.M., supra,* 202 Cal.App.4th 181. In that case, a therapist who was being stalked by a former patient obtained a one-year civil harassment restraining order under section 527.6. After the restraining order's term expired, the harassment resumed. (*Id.* at p. 183.) The trial court entered a three-year restraining order, and the former patient appealed. She argued in part that her actions following the expiration of the first restraining order, standing alone, did not constitute harassment. The court rejected this contention, stating, "[I]n evaluating the likelihood that the harassment will continue the court was not

9

limited to events that occurred after the first restraining order was entered. The lapse of the first harassment restraining order did not erase the facts on which the order was based, and did not preclude the court from considering the existence of those facts in evaluating the need for a new order. Nor was the court restricted as to the nature of the evidence from which it could draw an inference of a likelihood that the harassment would resume; the court could consider any evidence showing a likelihood of future harassment . . . ." (*Id*., at p. 189.) Here, similarly, the court was not limited to considering only the time period during which the temporary restraining order was in place when assessing the need for a restraining order addressing future conduct.

Scheu also argues that his actions "never rose to the conduct of harassing" Smith, and therefore "[t]here is a lack of convincing evidence to support the order after hearing." We disagree. Smith and Tia both testified that Scheu and his wife mocked them when they discovered their dog had been let out of their yard. Smith and Tia also testified that Scheu moved toward Tia in his truck in a manner that frightened them. Smith further testified that Scheu and his wife harassed her and her family members by calling them dog killers, erecting a shrine accusing them of killing a dog, contacting DCFS to falsely report drugs in the Smith home, and calling animal control multiple times. Notably, Scheu himself testified that he and his wife monitored, photographed, and conducted internet research on what he perceived to be a visitor to the Smith home, convinced that Smith and the visitor were engaged in some sort of conspiracy against him. The evidence amply supports the court's finding that Scheu harassed Smith as defined in section 527.6.

In his reply brief, Scheu contends that Smith's evidence was not credible. He argues that although Smith and Tia initially said Scheu was in a truck when he drove toward Tia, Tia later "changed her testimony to a car. [Record citation.] There is a big difference between a truck and a car." He also asserts, "The truck/car incident never happened per the Burbank Police" summary printout he submitted as evidence, which states only that Smith complained about the dog being let out of the yard. He asserts that his "police evidence proves that [Scheu] never tried to run down [Smith's] daughter." He also argues that the DCFS letter to Smith finding the allegations unfounded cannot be linked to him, because "the first observation to be noticed is that the Appellant's name 'Dean Scheu' is not mentioned anywhere on the document."

Scheu's attacks on Smith's and Tia's credibility do not demonstrate error. In assessing whether substantial evidence supports a trial court's order under section 527.6, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) Scheu's disagreement with the evidence Smith presented does not suggest that the evidence was insufficient to support the court's ruling.

Scheu next asserts that the "documentary evidence [was] suppressed by the court." He argues that the printout from the Burbank Police Department does not mention anything about his truck, so it "proves that [Scheu] never tried to run over [Smith's] daughter or dog in [Smith's] own words." However, he contends that "the Court refused to enter the Documentary Evidence into the record. In the Minute Order dated September 24, 2019 there is no mention of the Burbank Police Event Report." He argues,

11

"Documentary Evidence should have been allowed under the Summary of the Rules Evidence.  (Evid. Code § 1400; Fed. Rules. Evid. 901)."  (*Sic*.)

Scheu's claim of suppression of evidence is not supported by the record.  Although the court did not assign an exhibit number or letter to the police department printout, the reporter's transcript makes clear that the court received and considered the document:

"A:  [by Scheu]:  That's it. And this is the police report.

Q:  [by the court]:  Is that the same –

A:  Well, they call it an 'incident report,' police event number P.D. 192340201.

Q:  The same document I have?

A: Yes, sir."

Before ruling, the court took a recess to "go read the exhibits."  Nothing in the record suggests that the court did not accept or read the police department printout.

Finally, Scheu contends that on August 22, 2019 he filed a small claims action against Smith.  He asserts, "Abuse of Process by [Smith] was committed because [Scheu] filed a small claims lawsuit on [Smith] before the TRO was filed by [Smith]. [Smith] brought forth the TRO on [Scheu] looking to gain an advantage in the upcoming small claims action."  Scheu cites authorities discussing causes of action for malicious prosecution, including CACI No. 1501 ("Wrongful use of civil proceedings") and *Babb v. Superior Court* (1971) 3 Cal.3d 841, 845 ("It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor").

Scheu's contention does not demonstrate error.  There was no dispute that the small claims case was pending at the time Smith requested a restraining order; Smith noted the case in her request for a restraining order.  No evidence submitted by either party suggests that Smith intended the restraining order to affect the small claims case, or that it actually affected the small claims case.  Moreover, as discussed above, there was ample evidence to support the court's finding that Scheu's course of conduct constituted harassment, and that a restraining order was warranted.  We therefore reject Scheu's contention that there was an abuse of process here.

## DISPOSITION

The civil harassment restraining order is affirmed.  Smith is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


CURREY, J.


13